SYDNOR AND ANOTHER v. GASCOIGNE.

The statute, (Hart. Dig. Art. 2528,) which dispenses with protest and notice, in
order to fix the liability of indorsers, &c., of bills of exchange and promissory
notes, and substitutes, instead thereof, the bringing of suit within a certain time,
or to the first Term of the Court, &c., also dispenses with a demand.

The rule of *stare decisis*, so far as it applies to the decisions of our Court, should
not be disregarded, but on the fullest conviction that the law had been settled
wrong; and even then, &c.

Where the indorser " waived protest," and suit was not brought to the first Term,
&c., and the transaction was between merchants, the Court held that a demand
was not necessary; and the plaintiff recovered upon proof of the note and in-
dorsements, and the fact as to the parties being merchants, alone.

Appeal from Galveston.    This was a suit to the Fall Term,
1851, by appellee against Tryon & Towsey, as makers, and
appellants, as indorsers, of a promissory note of which the
following is a copy:

" $622 19-100.          GALVESTON, May 1st, 1850.

" Sixty days after date we promise to pay to the order of
" Sydnor & Bone, six hundred and twenty-two 19-100 dollars
" for value received with interest at twelve per cent. per an-
" num from date; payable in Galveston.

        " (Indorsed.)          TRYON & TOWSEY."

" Pay to the order of George Butler & Brother for account
" of J. W. Gascoigne, protest waived by us.

    " (Indorsed,)      SYDNOR & BONE, in liquidation."

" Pay to J. W. Gascoigne.

            " GEORGE BUTLER & BROTHER."

The petition stated the making and indorsing of the note,
but did not aver presentment to the makers for payment, their
refusal to pay, and notice of non-payment to the indorsers.
Appellants excepted to the petition as insufficient in law to
support the action against them as indorsers; and, in an amend-
ed answer, alleged that the note had never been presented to

56

the makers for payment, and notice of non-payment given to appellants, and that suit had not been brought to the first Term of the Court; insisting that, by reason of such failure of demand and notice and to bring suit against the makers, they were discharged from all liability as indorsers. Plaintiff demurred to the amended answer, or so much of it as set up the above defence, as being immaterial and insufficient in law. He amended by alleging that the appellants being indebted to the plaintiff, on the 9th of December, 1850, after the note sued on had become due, in discharge of said indebtedness indorsed said note to Butler & Brother, who indorsed it to the plaintiff. But there was no proof of this fact. Judgment by default was taken against Tryon & Towsey. Appellants' demurrer to the petition was overruled, and plaintiff's demurrer to the amended answer sustained. A jury was waived, the case submitted to the Court, and judgment given against appellants. There was a statement of facts which showed that the only facts in evidence were the note sued on, and the admissions of the appellants' counsel that the note and its transfers were between merchant and merchant.

Motions for a new trial and in arrest of judgment were overruled, and defendants Sydnor & Bone appealed.

*Sherwood & Goddard*, for appellants. It is respectfully submitted that the Court below erred in overruling the demurrer to the petition, and in sustaining the demurrer to the amended answer: also, in refusing a new trial, and overruling the motion in arrest.

Appellants were sought to be charged as indorsers. Their liability, in that character, was collateral and conditional. The contract of an indorser is, "that if the note, when duly "presented at its maturity, is not paid by the maker, he, the "indorser, will, upon due and reasonable notice given him of "the dishonor, pay the sum to the indorsee or other holder." (Story on Prom. Notes, Sec. 135; Story on Bills, Sec. 320.) Two separate and distinct acts are required of the holder, in

order to charge the indorser, viz: presentment of the note to the maker for payment, and notice of the dishonor to the indorsee. These conditions being imposed for the benefit of the indorser, he may waive them, either or both, if he sees fit; but such waiver must be unequivocal, as the law will not infer it by mere implication. (Story on Prom. Notes, Sec. 365; Story on Bills, Sec. 371.) Demand and notice being essentially distinct, waiver of one is not waiver of the other: and hence we find it expressly held that waiver of notice is not waiver of due presentment to the maker. (Story on Prom. Notes, Sec. 272, 366; Story on Bills, Sec. 371; 6 Mass. R. 524; 11 Wend. R. 629.)

In this case the indorsers waived protest. It is submitted that this was not a waiver of demand upon the makers; that such demand should, consequently, have been made, and alleged in the petition, and proved on the trial, in order to entitle the plaintiff to recover from the indorsers; and that it was competent for the indorsers to insist upon the failure of the holder to demand payment of the makers, as a discharge of their liability. Waiver of protest cannot be equivalent to waiver of demand, unless protest and demand are one and the same thing, or unless the former includes the latter. But a protest is not a demand: it is merely "a step towards the legal notice of dishonor." Nor does the former include the latter: for the demand is the act of the holder, while the protest is a notarial act subsequent to demand and dishonor, and belongs to the notice to be given, not to the demand to be made. In the words of Mr. Justice Story, "a protest is, properly "speaking, a solemn declaration on behalf of the holder, "against any loss to be sustained by the non-acceptance, or "non-payment, of the bill, as the case may be." (Story on Bills, Sec. 276.) That demand and protest are entirely distinct and independent is conclusively shown by the fact, that, while both are required by the law merchant in cases of foreign bills of exchange, protest is, by that law, dispensed with, in cases of inland bills and promissory notes, though demand

is as essential in the latter cases as in the former, in order to charge indorsers. A waiver of protest, then, is nothing more than a waiver of the notarial act which the law requires in certain cases, as one of the steps necessary to secure the liability of the indorser. It is not, necessarily, a waiver of notice of non-payment. Its only effect is expressed by Mr. Justice Story, in speaking of the exceptions to the general rule requiring a protest: One of these exceptions is, he says, " where the drawer or indorser has agreed or requested, that, "in case of dishonor, the bill should be returned without pro-" test, in order to save expenses." (Story on Bills, Sec. 275.) This is the only effect of such a waiver, and its obvious design : to save expenses, and not to substitute a primary and unconditional liability for a collateral and conditional one. The indorser's liability remains as it was, collateral. He is still a surety for the payment of the bill by the drawer, upon presentment to the latter, within a reasonable time after its maturity. His liability does not accrue, until payment is refused by the drawer ; for he has undertaken to pay, only on condition that the drawer does not : and if the holder should agree to give the drawer further time, the indorser who has waived protest, would be released from all liability on the bill, precisely as any other indorser would be.

It is respectfully insisted that the same principle holds good, and the same consequences ensue, where there has been default on the part of the holder in demanding payment of the drawer. In this case, the record shows default, if the allegations in the amended answer are true : for more than a year had intervened between the maturity of the note and the institution of the suit, during all which time there had been no presentment to the makers. There is nothing in the form of the indorsement on the note in suit, going to show that Sydnor & Bone did not intend, that Tryon & Towsey should first be applied to for payment. The words, " protest waived," convey no such meaning, of themselves ; nor can such an enlarged construction be given to them, unless it be warranted

by the particular circumstances of the transaction, or the usual course of dealing between the parties.   But it is a question of fact for a jury, whether or not the circumstances of the case show an intention on the part of the indorsers to waive application, in the first instance, to the makers for payment.   Unless such an intention be expressly and unequivocally avowed, it must be established by some kind of proof that the parties entered into the contract with such an understanding of its effect.   The Court below erred in holding the contrary, and extending, by implication, the contract of the indorsers beyond the import of the words in which it was expressed, without evidence of any facts warranting such an enlarged construction.

A waiver of protest, then, like a waiver of notice, does not, according to the general commercial law, amount to a waiver of demand—of presentment by the holder to the drawer, within a reasonable time after the maturity of the bill.

But it may be urged that the statute of March 20th, 1848, prescribing the mode of establishing the liabilities of drawers and indorsers of bills of exchange and promissory notes, has modified and varied the mercantile law on this subject. (Hart. Dig. p. 773.)

It is true that this Act does vary the law-merchant in several important particulars.

First. It provides a peculiar method, entirely unknown to that law, of securing the liability of drawers and indorsers, to-wit : by suit against the acceptor or maker within a specified time.

Secondly. It extends to all bills of exchange, inland as well as foreign, and also to promissory notes, to which merchants alone are parties, the provisions of the law·merchant with reference to the protest of foreign bills of exchange.

Thirdly. It limits and restricts the provisions of the law-merchant in regard to days of grace, to " contracts between merchant and merchant, their factors and agents."

But it is believed that the statute was not designed and can-

not be construed, to alter the law-merchant in any particular affecting the question presented in this case. When the statute allows the liability of an indorser of a promissory note, or of an inland bill of exchange, of the kind specified, to be, secured and fixed by a protest " for non-acceptance, or non-" payment, and giving notice of such protest to such drawer " or indorser, according to the usage and custom of merchants," it does no more than adopt the well established principles of the mercantile law, governing foreign bills of exchange, and extend them to other bills and promissory notes. It uses the same terms in the same sense. The words, "non-acceptance," " non-payment," " notice," and " protest," are employed with precisely the same meaning which is attached to them in the law-merchant. The 4th Section of the Act evidently contemplates a presentment for payment, as prior to, and entirely distinct from, the protest. The concluding clause of the Section expressly declares the intention of the Legislature to adhere to the law-merchant, as regards the formalities required of the holder to fix the indorser's liability, in all cases where notes or bills are protested.

The conclusion is, that, as by the law-merchant the waiver of protest of a foreign bill of exchange is not a waiver of demand, so, under our statute, the waiver of protest of a bill of exchange, or promissory note, is not a waiver of due presentment by the holder to the acceptor or maker for payment. If this conclusion is correct, the Court below erred in overruling the demurrer to the petition, and in not allowing appellants to avail themselves of the defence set up in their amended answer.

"If the bill or note be negotiated after it is due, and be " thereby opened to every equitable defence, yet a demand " must be made upon the drawee or maker within a reasonable " time, and notice given to the indorser, in order to charge " him, equally as if it had been a paper payable at sight, or " negotiated before it was due." (3 Kent, p. 92; 8 Ser. & Rawle, 351; 9 Johns. R. 121; 2 Conn. R. 419; 2 N. H. R. 159; 3 S. C. Const. R. 33; 3 Bailey's S. C. R. 457.)

*Jones & Ballinger*, for appellee. As well the making as the indorsement of the note was a transaction between merchant and merchant; all the parties being such. Under the statute of 1848, it was competent for the holder to fix the liability of the indorser by protest. (Dig. Art. 2531.) The parties certainly meant something by the indorsement; and when the defendants " waived protest," they intended to dispense with those acts, which would fix their liability as indorsers. And this is the only sense, in which the indorsee could understand it; he had the right to put that construction on the language used by the indorsement. See Coddington v. Davis, 3. Denio, 16, where the very question here presented is decided.

LIPSCOMB, J. The only point presented is, that notwithstanding our statute (Art. 2528, Hart. Dig.) dispenses with protest and notice, in fixing the liability of an indorser, it does not dispense with a demand. This question cannot now be considered an open one in this Court. In Cartwright v. Roff, (1 Tex. R. 78,) it is said in the opinion of the Court, that the statute dispenses with a demand, protest and notice. In Hutchins v. Flintge & Ralston, it is expressly decided that the statute dispenses with demand, protest and notice. (2 Tex. R. 473.) It was again so decided in Frost v. Holmes. (8. Tex. R. 29.) We are not disposed to open the question. The rule of *stare dicisis*, so far as it applies to decisions of our own Court, should not be disregarded, but on the fullest conviction, that the law had been settled wrong; and even then we should pause and consider how far the reversal would affect contracts and transactions entered into and acted upon, under the law of the Court.

If, however, the question was an open one, for the first time presented for our decision, we cannot perceive how we could decide differently, without disregarding the language of the statute. It is as follows, i. e.: " That the holder of any " bill of exchange or promissory note, assignable or negotiable

"by law, may secure and fix the liability of any drawer or "indorser of such bill of exchange and every indorser of such "promissory note, without protest or notice, by instituting "suit, &c." The demand, *eo nomine,* is not mentioned, "but the demand is the main constituent of a protest, and "without it there could be no protest. To dispense with "the protest, then, is to dispense with the elements of which "it is composed. There can be no doubt but the Legislature intended, wisely or not is not for us to say, to substitute a statutory diligence, in the place of the diligence required by the law-merchant. The counsel for the appellants consented that the statute should not receive a different construction from an agreement of the parties to waive protest and notice ; and authority is referred to, when such waiver is not regarded as dispensing with the necessity of a demand. The authorities are not very satisfactory on this question, and they have been pretty extensively discussed in Coddington v. Davis, (3 Denio, 16,) in which it was decided, that when a note was addressed by the indorser to the holder, "you need not protest T. B. C's "note due, &c., &c., for &c., and I will waive the necessity "of protest thereof;" it was sufficient to dispense with a presentment and notice of non-payment, and that the letter itself, without the other circumstances, would have been a valid waiver of a demand and notice. I believe that an examination of all the authorities would show, that wherever it was decided that a waiver of protest and notice did not dispense with a presentation or demand, it was so decided, from evidence of the meaning of the parties attached to the waiver, derived from local custom and other attending circumstances. If there was no express legislation, dispensing with the necessity of protest and notice, I would not be disposed to question the admissibility of such evidence ; but where there is a statute on the subject, it must override custom and the course of business ; the operation of the statute is uniform, but custom may be different in different localities. The judgment is affirmed.

Judgment affirmed.