## TRUEBA BROS. v. EARLY–FOSTER CO.*
### (No. 492–3889.)

(Commission of Appeals of Texas, Section A. Dec. 20, 1923.)

1. **Money paid** ⬛**—Tax on sale paid by buyer as consideration for change in contract held not recoverable as involuntary payment.**

Where buyer of sugar to be delivered f. o. b. P. N., Mexico, sought to have delivery made at El Paso, Tex., where the sugar was in storage and was required by the seller as a condition to such a change in the contract to pay a tax on the sale due the Mexican government, such payment was a part of the consideration for the change, and was not made under compulsion, and could not be recovered.

2. **Customs and, usages** ⬛**15(1)—Evidence of general custom not violative of parol evidence rule.**

Where a sales contract does not provide for payment of a tax incident to it, a general custom known to the parties and requiring payment of such tax by the buyer will be read into it, and *held*, accordingly, in an action by a buyer domiciled in this country against a seller domiciled in Mexico to recover back a tax paid in connection with the sale, that evidence of a general custom prevailing in Mexico requiring buyers to pay a tax exacted on all sales was admissible, and not a violation of the parol evidence rule.

Error to Court of Civil Appeals of Third Supreme Judicial District.

Action by the Early-Foster Company against Issidora Trueba, Sr., Thos. Trueba, and Issidora Trueba, Jr., doing business as Trueba Bros. Judgment for defendants was reversed and rendered by the Court of Civil Appeals, 243 S. W. 995, and defendants bring error. Judgment of Court of Civil Appeals reversed, and judgment of district court affirmed.

Douglas, Carter & Childers, of San Antonio, Sanford & Wright, of Eagle Pass, and T. Maxey Hart, of San Antonio, for plaintiffs in error.

Sanford & Harris, of Waco, for defendant in error.

BISHOP, J. Early-Foster Company, a corporation at Waco, Tex., defendant in error, and Issidora Trueba, Sr., Thos. Trueba, and Issidora Trueba, Jr., doing business under the firm name of Trueba Bros., and residing in the republic of Mexico, entered into the following contract:

"Eagle Pass, Tex., April 13, 1920.

"Contract entered into this day between parties signed hereto, Early Foster Company of Waco, Tex., named party of the first part, and Trueba Hermanos, named party of the second part, wherein Trueba Hermanos sell to Early-Foster Company 15 cars of white cubic cane sugar, in 110-pounds bags, 500 to 800 bags per car, at the price of $16.50 per bag, f. o. b. Piedras Negras, Coah., Mexico, cars to be shipped promptly via Eagle Pass, Tex., from storage at El Paso, Tex., or Sinola, Mexico, same to be payable upon arrival and delivery to Early-Foster Company, or to their representative upon their written order. The Border National Bank of Eagle Pass guarantees the payment of same, and it is requested that the draft and bill of lading be sent direct to them for collection. [Signed] Early Foster Co., by W. M. Foster,

"Accepted: [Signed] Trueba Hnos. Sucs. [Signed] Border Nat. Bank, S. P. Simpson, Pres."

Trueba Bros. had purchased this sugar from United Sugar Company under a contract to be delivered f. o. b. Piedras Negras. Thereafter, at the request of Early-Foster Company, for the purpose of allowing it to pay for and receive the sugar at El Paso, Tex., where same was in storage in transit from Sinoloa, Mexico, to be transported through a portion of Texas and re-entered into Mexico and delivered at Piedras Negras, a conference was held at El Paso, representatives of all three of said companies being present, as it was necessary to get the consent of both United Sugar Company and Trueba Bros. before this arrangement to permit Early-Foster Company, to pay for and receive the sugar at El Paso could be made. Early-Foster Company desired this arrangement, because it had contracts for the resale of the sugar, and immediate need for possession in order to fulfill its contracts of sale, and also expected to save a large amount in freight by diverting the sugar to various points in the United States.

At this conference it was agreed that Early-Foster Company might pay for and receive the sugar at El Paso instead of Piedras Negras, but it was also required by Trueba Bros. that Early-Foster Company pay $902.48, the amount of Mexican revenue stamps due the Mexican government on sales and delivery of goods.

Early-Foster Company thereafter filed suit for the recovery of this $902.48, together with other demands against Trueba Bros., in the district court of McLennan county, Tex., under allegations as follows:

"Plaintiff further shows that it was required to pay the sum of $902.48 on account of Mexican stamps, being a duty of some character, before it could finally get possession of the said sugar, and that this was one of the charges which defendants are bound to pay under the said contract of purchase and sale between plaintiff and defendants; and that therefore defendants have become liable and bound to pay plaintiff this said last-named sum, to pay which, though often thereunto requested, they have failed and refused, and still fail and refuse to plaintiff's great damage."

Trueba Bros. answered by general denial, and that—

"Under the laws of Mexico * * * it was necessary to deliver to the purchaser, at the

---

⬛For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Rehearing denied January 23, 1924.

time of paying for goods, and invoice or bill for the goods sold, upon which was required to be affixed and canceled revenue stamps of the government of Mexico, to the amount of one-half of 1 per cent. upon the purchase price. It is a custom of universal and immemorial usage in Mexico * * * that the purchaser shall pay for said revenue stamps required to be placed upon such invoice."

On the trial in the district court, judgment was rendered for plaintiff in error, and on appeal this judgment was by the Court of Civil Appeals reversed and rendered 'as to the claim for recovery of amount paid for revenue stamps. 243 S. W. 995.

[1] The Court of Civil Appeals held that under the rule that "money is recoverable where the payment is obtained by duress, extortion or oppression, or by taking an undue advantage of the payor's situation and where the payee ought not to retain it," the defendant in error was entitled to recover this payment. That court found as a fact that Early-Foster Company and Trueba Bros. "agreed that the sugar might be received and paid for * * * at El Paso instead of the destination fixed by the contract," and at the same time Trueba Bros. insisted upon the defendant in error paying the Mexican revenue tax, and this finding is supported by the evidence. It held that it was illegal to insist on this demand. We think it was not. The contract provided that the sugar was to be delivered f. o. b. Piedras Negras, Coah., Mexico. The defendant in error desired that the place of delivery be changed, and that it be allowed to pay for and receive the sugar at El Paso. It called a conference at El Paso in order to effect this change. Another contract effecting this change was there made. As part of the consideration for this change in the original contract, plaintiff in error insisted and demanded that defendant in error pay this tax. Plaintiff in error had a legal right to refuse to agree to this change and insist on the terms of the original contract, and had also the legal right to insist and demand that defendant in error pay this tax in consideration for this change, in allowing defendant in error to pay for and receive the sugar at El Paso instead of Piedras Negras. Defendant in error was not forced to make this payment, but did so in order to effect this change, for the reason that it was to its advantage, and cannot claim the payment was compulsory. It is not therefore entitled to recover, regardless of custom.

[2, 3] We cannot agree with the Court of Civil Appeals on its holding that evidence of a general custom in Mexico that the purchaser pay the revenue tax evidenced by stamps required to be affixed to an invoice on the payment for goods would vary or contradict the terms of this contract. The contract provides for a certain price to be paid f. o. b. Piedras Negras, Mexico. There is nothing in the pleadings or the evidence to show that the tax was in any way an incident to the transportation of this sugar. If it was an incident to or a charge for the transportation, the burden was on defendant in error to so show. The record indicates that this tax applies to all sales and delivery of goods whether transported or not. There is evidence that a representative of Early-Foster Company was in Piedras Negras, Mexico, when the contract was executed. The trial court from the evidence was authorized to find, and, in support of the judgment there rendered, it is presumed that said court did find, that Early-Foster Company had actual knowledge of this general custom. If it did, it would be unreasonable to hold that, by providing for delivery of the sugar at Piedras Negras at a certain price, it would be relieved from paying the tax. The tax was not a part of the purchase price of the sugar. The tax was paid to the Mexican government. The price recited in the contract only was paid to the seller. The tax was an incident to the contract, and the contract having failed in its terms to provide for its payment, and both parties to the contract knowing the general custom, the rule is that the custom by implication will be read into and become a part of the contract. Barreda v. Milmo National Bank (Tex. Com. App.) 252 S. W. 1038; Smith v. Smith (Tex. Civ. App.) 234 S. W. 420.

In 17 Corpus Juris, 499, the rule is stated as follows:

"Evidence of usage is allowed not only to explain but also to add tacitly implied incidents to the contract, in addition to those which are actually expressed; and, where a contract is not in itself a complete expression of the intention of the parties, valid and known usages, if not inconsistent with the express terms, are admissible to supply matters as to which the contract is silent."

The case of Withers v. Moore, 140 Cal. 591, 74 Pac. 159, cited by the Court of Civil Appeals, is not applicable to this case. There was a custom among those engaged in buying and shipping coal in San Francisco that where coal was bought in a foreign country, and, between the time of making the contract and the time of delivery, there was a change in the duty to be paid, such change should operate to the benefit or injury of the purchaser. The custom there pleaded would vary the express terms of that contract, as is shown by the following quotation.

"The contract as made by the cablegrams and explained in the letter is not uncertain with respect to the point in question. It is a positive agreement by the defendant to buy the coal in question of the plaintiff at the price of 24 shillings and 3 pence per ton, to be delivered to him free of any expense of freight, insurance, exchange, or duty, all of which were to be paid by the plaintiff. To attach to this contract a custom of San Francisco, the effect of which would be that if the cargo was not received until after July 1, 1894, the defendant

would pay 35 cents less per ton than the price agreed upon, would be to vary the terms of a written contract by parol evidence."

We recommend that the judgment of the Court of Civil Appeals be reversed, and that of the district court affirmed.

CURETON, C. J. Since it is clear that the $902.48 was paid voluntarily under a subsequent agreement, the judgment of the Court of Civil Appeals is reversed, and that of the district court affirmed.