## FIELDS v. HARRIS. (No. 11690.)

Court of Civil Appeals of Texas. Fort Worth. Feb. 26, 1927.

**1. Venue** ⬅⮕7—**Agreement to ship standard alfalfa held equivalent to warranty on issue whether custom to allow inspection and guarantee grades, at destination, established venue there (Rev. St. 1925, art. 1995, subd. 5).**

Agreement to ship "standard alfalfa" *held* equivalent to contract of warranty that hay should be of such grade, with respect to issue whether custom of sellers to allow inspection by buyer at destination and guarantee official

weights and grades could be read into contract, so as to establish venue in county of destination, under Rev. St. 1925, art. 1995, subd. 5.

**2. Venue** ⬅⮕7—**Prima facie, contract to sell and deliver f. o. b. point of origin passed title to consignee when loaded as respects venue (Rev. St. 1925, art. 1995, subd. 5).**

Prima facie, contract to sell and buy hay, to be delivered on board cars at point of origin, billed to named city, but not in terms binding shipper to deliver hay, or pay consignee any damages for breach of contract, in such city, passed title to consignee when hay was loaded, as respects issue of venue in county of destination, under Rev. St. 1925, art. 1995, subd. 5.

**3. Frauds, statute of** ⬅⮕128—**Collateral agreements cannot be added by usage to contracts required to be in writing.**

When statute requires that contract sought to be enforced be in writing, collateral agreements cannot be added by usage, though not contradicting or varying terms of written contract.

**4. Venue** ⬅⮕7—**Sellers' custom to permit inspection and guarantee grades, at destination, held, in suit for breach of warranty, not to establish venue in county of destination (Rev. St. 1925, art. 1995, subd. 5).**

Custom for sellers to allow inspection by buyer at destination and guarantee official destination weights and grades *held* not to establish venue of suit for breach of warranty of hay in county of destination, under Rev. St. 1925, art. 1995, subd. 5, though it might have been given effect in trial on merits as supplement to written contract without violating parol evidence rule; burden being on plaintiff to plead and prove that defendant contracted in writing to perform obligation in such county.

Appeal from Tarrant County Court; H. O. Gossett, Judge.

Action by H. P. Harris against J. A. Fields. From an order overruling defendant's plea of privilege, he appeals. Reversed, rendered, and remanded, with instructions.

J. N. Townsend, of Dallas, for appellant.
Baylor B. Brown, of Fort Worth, for appellee.

DUNKLIN, J. This appeal is from an order overruling appellant's plea of privilege to be sued in El Paso county which is the county of his residence.

The suit was instituted against the appellant by H. P. Harris, a resident citizen of Collin county, to recover certain alleged debts which plaintiff alleged the defendant owed him arising out of a contract of sale by the defendant and purchase by the plaintiff of ten carloads of alfalfa hay. The record shows that both parties were engaged in the purchase and sale of hay and grain; that the plaintiff was doing business under the firm name of Harris & Co., with his office in Dallas county, and having a warehouse in Fort

Worth, Tarrant county, where practically all of his grain and hay shipments were handled, and that the defendant was doing business under the firm name and style of Texas, New Mexico Alfalfa Growers' Exchange, with his principal office in the city of El Paso, El Paso county, Tex., and buying and selling hay and grain at wholesale in Texas and New Mexico. The record further shows that the plaintiff purchased from the defendant ten carloads of alfalfa hay, all of which was shipped to, and received by, him at his place of business in Fort Worth; five cars being shipped from El Paso, Tex., and five cars from Ft. Stockton, Tex. The contract of purchase and sale was evidenced by telegrams and letters which passed between the parties, and the plaintiff sought to maintain the venue of the suit in Tarrant county upon allegations that defendant's contract was in writing, and bound him to performance in Tarrant county within the provisions of subdivision 5 of article 1995, Rev. Statutes 1925, reading as follows:

"If a person has contracted in writing to perform an obligation in a particular county, suit may be brought either in such county or where the defendant has his domicile."

The defendant filed his plea of privilege to be sued in El Paso county, which was the county of his residence, as alleged in plaintiff's petition. The plea contained an express denial that the defendant had contracted in writing to perform the obligation sued on in Tarrant county, and further alleged that no exception to exclusive venue in the county of one's residence, as provided by law, existed in the case. The plea, in all other respects, was in strict compliance with article 2007 of the Statutes, and was duly verified.

In reply to that plea, the plaintiff filed a controverting affidavit setting out, as was done in his original petition, all the letters and telegrams relating to the transaction and relied on by him to show a contract in writing by the defendant within the meaning of the statutory provision quoted above; and in that connection he further pleaded a general custom among dealers in hay and grain, in view of which, according to allegations in his petition, that correspondence had the legal effect to bind the defendant to perform the obligation in controversy in Tarrant county. The pleading with respect to such custom as shown in the plaintiff's controverting affidavit was as follows:

"That in accordance with the usual custom of the defendant and the then well-established and prevailing custom among grain and hay dealers the defendant shipped all of said hay on arrival drafts with bills of lading attached to said drafts, allowing inspection of said hay by plaintiff or his order on each car at destination, and guaranteed official destination weights and grades, and that all of said hay was shipped by defendant to plaintiff under and in accordance with his custom, and the prevailing custom of allowing inspection at destination and guaranteeing official destination weights and grades."

Upon the issue thus joined, evidence was heard, at the conclusion of which the plea of privilege was overruled.

All the communications between the parties touching plaintiff's demand were in writing, and appear in letters, telegrams, written statements of accounts, drafts drawn, etc. Plaintiff introduced in evidence the following letters and telegrams:

"Exhibit No. 1.

"Western Union Telegram.

"Aug. 13, 1923 P M 12 14.

"El Paso, Texas 13 1103A, Harris & Company, Slaughter Bldg. Dallas, Texas: Accept affrighted standard alfalfa luncheon f o b cars Fort Stockton wire shipping instructions. Texas New Mexico Alfalfa Growers' Exchange."

"Exhibit No. 2.

"Postal Telegram.

"Aug. 13, 1923.

"Texas New Mexico Alfalfa Growers' Exchange, El Paso, Texas: Ship Fort Worth make it ten cars if desire.          Harris & Company.

"Filed 12:50 P. M."

"Exhibit No. 3.

"Letter.

"Aug. 13, 1923.

"Texas New Mexico Alfalfa Growers' Exchange, El Paso, Texas, Gentlemen: Referring to exchange telegrams this date, we beg to confirm purchase from you five carloads of official standard alfalfa hay at $17 per ton basis f. o. b. cars Ft. Stockton, Texas, with instructions to ship all five cars to Fort Worth, Texas. In our reply giving shipping instructions to Fort Worth we asked you to make it ten cars instead of five, if you desired. We hope to have the confirmation on ten cars from you.

"Please make all drafts as usual direct, separately through the Republic National Bank, Dallas, Texas.

"If I can furnish a few cars of number one official alfalfa at $27.50 we might use a few cars. All we could get now would be $28.50 per ton, and slow sale at that figure, but believe will go higher later, when demand picks up.

"We hope to do a big business with you this fall, and winter. When having anything to offer, please advise us, and we will always do our best to trade with you.

"Yours very truly,

"Harris & Company."

"Exhibit No. 4.

"Western Union Telegram.

"Aug. 14, 1923, PM 2 47.

"El Paso, Texas, Harris & Company, Slaughter Bldg., Dallas, Texas: Have booked ten cars standard shipping same to Fort Worth, Texas. Texas New Mexico Alfalfa Growers' Exchange."

"Exhibit No. 5.

"Aug. 14, 1923.

"Texas New Mexico Alfalfa Growers' Exchange, El Paso, Texas. Gentlemen: Referring

to your wire this date we supplement our letter of the 13th, and confirm 10 cars of official standard alfalfa hay at $17.00 per ton, f. o. b. cars Fort Stockton, Texas, with instructions to ship same to Fort Worth, Texas.

"Yours very truly,
"Harris & Company."

"Exhibit No. 6.

"Texas-New Mexico Alfalfa Growers' Exchange.

"El Paso, Texas, August 16, 1923.

"Harris & Company, Slaughter Bldg., Dallas, Texas. Gentlemen: We have booked and are shipping you five cars of standard alfalfa hay from Fort Stockton and five cars of standard hay from here, making ten cars in all; basis $17.00 per ton Fort Stockton and $17.50 per ton from here, this the difference in freight rate to Fort Worth.

"We thank you very much for this order and hope that we will be able to do quite a nice business with you. We are today offering choice official No. 1. alfalfa hay at $29.00 per ton, delivered Texas common points.

"Thanking you, we remain

"Yours very truly,
"J. A. Fields, Manager."

Plaintiff testified as follows:

"As stated before, I have purchased hay from Mr. Fields for six or seven years, and it was Mr. Field's custom to sell all shipments on arrival terms, that is, with shipper's order, bills of lading attached to arrival drafts, allowing destination inspection, and guaranteeing destination grades and destination weights within two per cent. When I made this contract to purchase these ten cars of hay, I made it in contemplation of and with the understanding that the same terms as all former shipments would apply, and that it would be in accordance with the general custom prevailing among all hay and grain men; that custom is to sell alfalfa and ship it with bills of lading attached to the draft subject to destination weights and grades, same being guaranteed by the shipper. All of these drafts drawn on me by the defendant were paid after the arrival and inspection of the cars at Fort Worth."

According to further testimony, the words "affrighted" and "luncheon," used in the first telegram sent by plaintiff shown above as Exhibit 1, are code terms in use by shippers; and, according to that code, "affrighted" means "five cars," and "luncheon" means $17.50." Other documentary evidence was introduced by plaintiff, consisting of numerous telegrams, letters, accounts rendered, and drafts, etc. That evidence showed that the hay contracted for was shipped by defendant and consigned to the plaintiff at Fort Worth, and that the defendant drew a draft through the Republic National Bank of Dallas on plaintiff at Dallas for each shipment with bill of lading attached; each draft stipulating that it was payable on arrival of the shipment, and all of those drafts were duly paid by the plaintiff, and the bills of lading were then taken up by him. The evidence further showed that, when each shipment was made, the defendant mailed to plaintiff a statement of account, charging plaintiff with the amount due for the shipment according to contract price, and with the further statement that the shipment had been made from the point of origin, either Ft. Stockton or El Paso, as the case might be, via the Texas & Pacific Railway Company, and that the draft for the same with bill of lading attached thereto had been drawn on the plaintiff at Dallas through the Republic National Bank.

The exhibits further showed that the hay was of a grade inferior and lower than that of "standard alfalfa"; that plaintiff did not discover those facts until after he received the bill of lading and opened the cars; that, after making such discovery, he wired the defendant to that effect, and in reply to those messages the defendant, by telegrams and letters, instructed the plaintiff to dispose of the hay for the best price obtainable; and that he (the defendant) would reimburse the plaintiff for his losses. One of the exhibits was a letter addressed to plaintiff, at McKinney in Collin county, agreeing to pay plaintiff a commission of $1 per ton for selling six cars of hay, such payment to be made by sending to plaintiff the defendant's check therefor. Other exhibits consisted of statements rendered by plaintiff to the defendant showing the amounts he paid for the several shipments, expenses incurred by him in handling the same, amounts realized from the sales thereof, and amounts of losses sustained by plaintiff by reason of the quality of the hay being inferior to "standard alfalfa."

The sole question to be determined here is whether or not the evidence showed a contract in writing by the defendant to perform the obligations sued on in Tarrant county within the meaning of subdivision 5, art. 1995, of our Revised Statutes, noted above.

The six exhibits set out above constitute the only proof of a written contract between the parties, unless it can be said that the custom pleaded and proven is to be read into that correspondence the same as if it had been specifically embodied therein. The shipment of hay to Fort Worth, drafts drawn on plaintiff with bills of lading attached, payable on arrival of shipments, accounts rendered by the defendant with statements that the shipments had been made to Fort Worth, defendant's telegrams directing plaintiff to sell the hay for plaintiff's account and promising to pay plaintiff his losses sustained by reason of the inferior quality of hay, and his letter agreeing to pay a commission for reselling six of those cars—all tended to establish the custom pleaded and testified to by the plaintiff, but all those transactions were subsequent to the consummation of the contract theretofore made, as indicated by the six exhibits copied above, and therefore did not enter into and become a part of that contract,

unless the custom pleaded could be read into it.

We shall not undertake to review the many decisions of this state involving similar controversies, since some of them at least tend to confusion by reason of the varying circumstances involved in the different transactions, and to attempt to review them in full would unduly extend this opinion. The defendant's contract is not sui generis, and the issue involved is to be determined by general principles pertaining to the law of contracts.

[1, 2] The six exhibits copied above evidence a contract in writing of purchase and sale, by the terms of which the defendant agreed to sell, and plaintiff agreed to buy, ten carloads of standard alfalfa hay at the price stated; that he would deliver the hay on board the cars at the point of origin, either at Ft. Stockton or at El Paso, billed to Fort Worth; that he would draw drafts on plaintiff at Dallas through the Republic National Bank of Dallas; that plaintiff would honor that draft, and the agreement to deliver the hay f. o. b. at point of origin bound plaintiff to pay the freight charges on the shipment. Defendant's agreement to ship "standard alfalfa" under the circumstances was in law equivalent to a contract of warranty that the hay should be of that grade with respect to the issue now under discussion. Aside from the question of custom, the obligations so enumerated constituted the entire contract between the parties. That contract did not in terms bind the defendant to deliver the hay in Fort Worth or to there pay plaintiff any damages for a breach of defendant's contract in any particular. Prima facie, it had the effect to pass title to plaintiff as soon as the hay was loaded, consigned to plaintiff at Fort Worth. Robinson & Martin v. H. & T. C. Ry. Co., 105 Tex. 185, 146 S. W. 537. And the sole issue is as to defendant's contract, irrespective of what plaintiff agreed to do as a consideration therefor. Allison v. Hamic (Tex. Com. App.) 260 S. W. 1037; Simpson v. Green (Tex. Com. App.) 231 S. W. 375; Gottlieb v. Dismukes (Tex. Civ. App.) 230 S. W. 792.

Burkitt v. Wynne, 62 Tex. Civ. App. 560, 132 S. W. 816, writ of error denied, was a suit for specific performance of a contract of sale of growing timber, and, in the alternative, for damages for a breach of that contract. In that suit it was held that the defendant was entitled to be sued in the county of his residence, notwithstanding the fact that the land on which the timber was growing was in the county where the suit was instituted.

Luter v. Ihnken (Tex. Civ. App.) 143 S. W. 675, was a suit for specific performance of a contract of sale of real estate instituted in the county where the land was situated. The defendant resided in another county, and pleaded his privilege to be sued in the county

of his residence. That plea was sustained by the trial court, and the judgment was affirmed by the Court of Appeals. To the same effect was Garrison v. Stokes (Tex. Civ. App.) 151 S. W. 898.

In Ogburn-Dalchau Lumber Co. v. Taylor, 59 Tex. Civ. App. 442, 126 S. W. 48, it was held that a contract in writing for the sale of lumber which did not provide where the lumber was to be delivered nor where the purchase price was to be paid, but merely provided that the freight should be paid at the place of delivery, did not show a contract in writing by the purchaser to pay in the county of delivery, and hence he was entitled to be sued in the county of his residence, which was a different county.

In Lucas v. Patton, 49 Tex. Civ. App. 62, 107 S. W. 1143, it was held that a suit for damages for a breach of contract to make title to, land is a personal action, and the defendant is entitled to his privilege to be sued thereon in the county of his residence.

[3] In 2 Williston on Contracts, §§ 652 to 654, the general rule is stated that collateral agreements may be added to written contracts by usage when the same does not contradict or vary the terms of the written contract. To the same effect are the following decisions in this state: Barreda v. Milmo National Bank (Tex. Com. App.) 252 S. W. 1038; Smith v. Smith (Tex. Civ. App.) 234 S. W. 420; Trueba v. Early-Foster Co. (Tex. Com. App.) 256 S. W. 909.

But, as appears from those authorities, that announcement has reference only to the parol evidence rule. A contrary rule obtains when the statute requires the contract sought to be enforced to be in writing. In section 631 of the same volume of Williston on Contracts, the following is said:

"Where the statute of frauds requires a contract to be in writing the whole contract must be in writing, and oral changes or additions either contemporaneous or subsequent are necessarily invalid apart from the parol evidence rule."

And in Sydnor v. Gascoigne, 11 Tex. 449; Weinsteine v. Harrison, 66 Tex. 546, 1 S. W. 626, Dwyer v. G., C. & S. F. Ry. Co., 69 Tex. 707, 7 S. W. 504, and Mo. Pac. Ry. Co. v. Fagan, 72 Tex. 127, 9 S. W. 749, 2 L. R. A. 75, 13 Am. St. Rep. 776, it was held that, where there is a statute on the subject, it will override a custom or course of business to the contrary.

It is to be noted further that there was no ambiguity on the face of the written contract, nor was the custom pleaded to show and remove any latent ambiguity. The custom was pleaded solely for the purpose of supplementing the written contract by a separate implied agreement to be established alone by parol evidence of the custom.

[4] The custom pleaded by plaintiff was to the effect that in transactions such as the

one in controversy the seller allows an inspection by the buyer at destination, and guarantees "official destination weights and grades." Even if given effect, that guaranty did not include a further contract to deliver the hay at Fort Worth or to answer in damages for its breach in Fort Worth any more so than did his warranty or guaranty of weights and grades when the hay was loaded on the cars at the point of shipment. Hence, under authorities cited above, the alleged custom of guaranty would not bring the case within the operation of the venue statute invoked, even if it could be given effect in the determination of that issue; and, since the written contract itself did not do so, it follows that venue in Tarrant county was not shown.

Furthermore, under the authorities cited, the custom pleaded could not be given effect to establish venue in Tarrant county, even though it might have been given effect upon the trial of the case on the merits as a supplement to the written contract without violating the parol evidence rule, since, in order to show such venue, the burden was upon plaintiff to plead and prove that defendant had contracted in writing to perform the obligation sued on in Tarrant county. We are impressed that a probable failure to keep this distinction in mind has led to apparent confusion in some of the decisions on the question now under discussion. The venue statute imposing that burden is as specific and definite as the statute of frauds, and to hold that the custom is controlling on the issue would be to allow it to override and supersede the plain and positive provisions of the statute.

For the reasons noted, the judgment of the trial court is reversed, and judgment is here rendered sustaining appellant's plea of privilege; and the cause is remanded to the trial court, with instructions to make the necessary orders transferring the case to the proper court of El Paso county, in accordance with the statutes in such cases made and provided.