CONSOLIDATED KANSAS CITY SMELTING & REFINING COMPANY v. LONGINO GONZALES.

Decided April 1, 1908.

**1.—Conversion—Usages and Customs—Contract.**

Parties are always presumed to contract with reference to a uniform and well-settled custom or usage pertaining to the matters concerning which they contract, where such usage or custom is not in opposition to well-settled principles of law nor unreasonable.

**2.—Same—Case Stated.**

A rule by a smelting company that ore shipped to it to be smelted would be forfeited to the company if the owner or shipper did not give some order as to its disposition within fifteen days after it had been received by the company was unreasonable, and not to be tolerated in the absence of evidence, direct or circumstantial, that the owner knew of the rule at the time the shipment was made.

**3.—Principal and Agent—Declarations of Agent—Evidence.**

Whatever an agent does or says in reference to the business in which he is at the time employed, and within the scope of his authority, is done or said by the principal, and may be proved as if the evidence applied personally to the principal. Hence, the declarations of employes, made to a superior officer while engaged in a search for a lot of ore shipped to and received by a smelting company, and which the company was charged with converting, were competent evidence.

**4.—Evidence—Entry in Book.**

Entries in books of a railroad company, made in the regular course of its business, by one whose duty it was to make them, but whose testimony could not be procured, are competent evidence when identified by the proper custodian of the books and verified as having been made by the man whose duty it was to make them.

Appeal from the 34th Judicial District, El Paso County. Tried below before Hon. James. R. Harper.

*Waters Davis,* for appellant.

*S. Engelking,* for appellee.

FLY, ASSOCIATE JUSTICE.—Appellee sued appellant to recover the sum of $2433.60, alleged to be due him for twenty-six tons of copper ore converted to its own use by appellant. Appellant answered by general denial and pleaded that the ore was received under a custom that the value should be ascertained and that appellant should not pay for it unless it contained three percent of copper, and that less than that percentage was valueless and that the ore in question contained less than three percent and appellee had been

notified of that fact but had abandoned the ore. The cause was tried by a jury and resulted in a verdict and judgment for appellee for $1375.

The circumstances are sufficient to justify the conclusion that appellee shipped a car load of copper ore from Mexico to appellant, at El Paso, Texas, and advised appellant of that fact, that the bill of lading accompanying the shipment was received by appellant; that appellant acknowledged receipt of the ore and wrote appellee's agent·about it. The ore received by appellant was shown to be of the same color and quality as that shipped by appellee. The identity of the ore shipped and that received by appellant was fully proved. Appellant converted the ore to its own use and refused to pay for the same. It was shown to be worth at least the sum found by the jury. These conclusions of fact dispose of the first and second assignments of error.

The court made the right of appellee's recovery depend, among other things, on proof that appellee "shipped to defendant a car load of ore," and "that the same ore so shipped by the plaintiff was received by the Consolidated Kansas City Smelting and Refining Co.," and it was not error, therefore, to refuse a charge embodying the same matter submitted by appellant.

No matter what rules may have been· adopted by appellant as to a forfeiture of the ore if a person shipping ore to appellant failed to give orders as to its disposal within fifteen days after it had been received by appellant, it had .no right to appropriate the property of another to its own use and benefit and refuse to pay for it. Appellant had the right to establish reasonable rules as to the conduct of its business, and persons dealing with it will be required to comply with such rules, but a rule permitting the arbitrary forfeiture of property rights. and the appropriation of the property of others will not be tolerated. Appellant may conduct ·its business in its own way· so long as it does not attempt to disregard the rights of others, but it can not establish rules the enforcement of which would allow it to confiscate and appropriate ˙the property of other parties. The rules and customs of a certain business will be held to have been in contemplation in making a contract involving that business, but unjust and unreasonable rules and customs are not allowed to enter in and form a part of such contracts. As said by the Supreme Court of Kansas in the case of Smythe v. Parsons, 14 Pac., 444, cited by appellant: "Parties are always presumed to contract with reference to a uniform and well settled custom or usage pertaining to the matters concerning which ˙they make the contract, where such custom or usage is not in opposition to well settled principles of law, nor unreasonable."

In this case the custom or usage of appellant was not shown to be so general and so universally received ˙and acted upon as that no one could profess ignorance of it, and appellee was not shown to have. any knowledge of it, but on the other hand it affirmatively appeared that appellee knew nothing of such custom, and his experience in shipping to appellant had shown him that no such rule existed. An expert, placed on the stand by appellant, swore that he

knew nothing of the custom as to the time when the ore would be forfeited by the owner. Appellant could not have contracted with a view to a custom that he knew nothing of and of which even Taylor, who was constantly about appellant's smelter, knew nothing. Walls v. Bailey, 49 N. Y., 464. As said in the case cited: "It would seem, however, that upon principle, for a party to be bound by a local usage, or a usage of a particular trade or profession, he must be shown to have knowledge or notice of its existence." It follows that the court did not err in refusing to instruct the jury that appellant could convert the ore to its own use, if it was not called for by appellee within fifteen days. Appellant did not notify appellee of the existence of its rule. Appellant could not arbitrarily establish such a rule and under its operation appropriate the property of appellee. There was no evidence that the large amount of ore on hand necessitated the use of appellee's ore, in order to make room for other ore.

The manager of the smelter had ordered the ore to be held for appellee and thought it was there when appellee came to see about it, and sent his clerk with appellee to show it to him. He could not find the ore and the manager started an investigation to find it. The statements of the superintendent and other employees to the manager, while he was endeavoring to locate the ore, was a part of the transaction and the court did not err in permitting the manager to testify as to those statements. The statements showed that the manner of disposal of the ore was clearly within the scope of the employment of the agents of appellant, who made the statements, and they were made while the transaction was depending. Missouri Pac. Ry. v. Sherwood, 84 Texas, 125. "Whatever an agent does or says in reference to the business in which he is at the time employed and within the scope of his authority, is done or said by the principal, and may be proved as if the evidence applied personally to the principal." American Fur Co. v. United States, 27 U. S., 358; First National Bank of Xenia v. Stewart, 114 U. S., 224. If the admission of the statements of the employes had been error appellant could not profit by it, because it was clearly shown that appellant had received the ore and had made some disposition of it, and its liability was not affected whether it was converted by mistake, as the statements seem to indicate, or with a fixed and determined purpose. The ore was gone.

Appellee qualified himself as an expert in ores and it was not improper to allow him to state the approximate percentage of copper there was in the ore he sent to appellant. Neither was it improper to allow him to state that the car contained about twenty wagon loads of ore, and that each wagon load was a little over two thousand pounds. The testimony as to what he knew of the weight from the railroad agent's weighing of the ore was stricken out on motion of appellant, and there is really no bill of exceptions upon which to found any complaint as to the testimony about the weight of the ore.

A receipt given by the Sierra Madre & Pacific Railway Company
Vol. L. Civil—6.

for freight to Juarez, Mexico, on car of ore, No. 1122, which was identified as the one delivered to appellant, was admitted in evidence over the objection of appellant. It could not have prejudiced the cause of appellant as it merely served to identify the car, and that was amply accomplished by other testimony. Appellant admitted in its pleading that it received car 1122, loaded with ore.

It was admissible to prove from the books of the Sierra Madre & Pacific Railway Company that it received car 1122 for transportation to Juarez, just across the Rio Grande from El Paso, on October 28, 1905, that its contents weighed about twenty-seven tons, the name of the shipper and the name of the consignee. The entries were sworn to by the custodian of the book of the railway company, and it was sworn that they were made by a man whose duty it was to make them. That man was not accessible as a witness because he had absconded, and his whereabouts were unknown. The entries were made in the regular course of the railroads business. The railroad had no inducement to falsify its books. Such entries are generally admitted when the person making them is deceased, and also when the person who made the entries is in parts unknown and can not be procured. Greenleaf Ev., secs. 115, 116; Whitcher v. McLaughlin, 115 Mass., 167; New Haven & N. H. Ry. Co. v. Goodwin, 42 Conn., 230; Atchison, T. & S. F. Ry. v. Williams, (Texas Civ. App.), 86 S. W., 38. The last case cited is directly in point. See also Wigmore on Evidence, secs. 1517 to 1561, where the subject is fully discussed. In sec. 1518 of that work it is stated that in 1832 the rule as to the admission of regular entries in books "was understood to cover all entries made by a person since deceased in the ordinary course of his business whether a person wholly unconnected with the parties, or the clerk of a party, or the party himself; and it is this general exception that today is unversally recognized." The doctrine has been extended in the United States, at least, to the entries of absent persons whose testimony is not obtainable by the court. North Bank v. Abbot, 30 Mass., 471; Cameron Lumber Co. v. Somerville, (Mich.), 89 N. W., 346; Rigby v. Logan, (S. C.), 24 S. E., 56; State Bank v. Brown, 165 N. Y., 216.

The judgment is affirmed.

*Affirmed.*

Writ of error refused.