## BARREDA v. MILMO NAT. BANK.
### (No. 447-3831.)

·(Commission of Appeals of Texas, Section A. June 30, 1923.)

**Customs and usages** ⊙=12(1)—**Certificate of deposit of Mexican dollars payable in current funds could be repaid by payment in Mexican bills according to custom.**

Where a bank ran an American and also a Mexican account and such custom was known to a depositor, who made a deposit in the Mexican account of a certain number of Mexican dollars, receiving a certificate of deposit payable in current funds, there was no liability on the part of the bank to pay in American money at the rate of $1 for every $2 of Mexican money, or to pay in Mexican silver, but the deposit might be ·repaid by paying in Mexican bank bills, according to the ·custom of the bank.

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Action by Porfiria G. de Barreda against the Milmo National Bank. Judgment for defendant was affirmed by the Court of Civil Appeals (241 S. W. 743), and plaintiff brings error. Affirmed.

Ball & Seeligson and C. W. Trueheart, all of San Antonio, and N. A. Rector, of Austin, for plaintiff in error.

J. D. Dodson, of San Antonio, for defendant in. error.

RANDOLPH, J. This suit was instituted by plaintiff in error to recover of defendant in error upon a certificate of deposit, which certificate is in words as follows:

"Daniel Milmo, President. Miles T. Gogley, Vice President. John W. Mussett, Cashier. The Milmo National Bank of Laredo. No. 2516. Mexican $16,000.00. Laredo, Texas, March 7, 1911. Porfiria G. de Barreda has deposited in this bank sixteen thousand and no/100 Mexican dollars payable to the order of herself in current funds six months after date on the return of this certificate properly indorsed, with interest at the rate of five per cent. per annum if left six months or longer. [Perforated: $16,000.00.] Albert Martin, A. Cashier."

The word "Mexican," where it appears on the certificate, is stamped in red ink.

From a judgment adverse to her in the trial court, defendant appealed to the Court of Civil Appeals, and the trial court's judgment was there affirmed. 241 S. W. 743.

The certificate herein sued on is a renewal of several other certificates. The original deposit was made by Abran de la Garza, and the plaintiff testified that she inherited it from her aunt, Mrs. de la Garza, in 1907, as a Mexican deposit. The amount of the certificate in 1907, when she inherited it, was $22,000. The plaintiff is somewhat confused in her testimony as to how the certificate

came to be reduced to the amount of the certificate sued on, but there can be no question but what she did receive a part of the principal of the original certificate, as we find in the statement of facts one canceled certificate payable to her order for $22,000, dated December 29, 1908, and another for $17,000, payable to her order, dated January 5, 1910, marked "Paid," of which the certificate sued on was evidently a renewal. The cashier of the bank, who issued the certificate sued on, testified that the first certificate issued to the plaintiff was dated December ·29, 1908, and was for $22,000, and that this was subsequently reduced to $17,000 on January 5, 1910, and on March 7, 1911, was again reduced to the sum of $16,000.

The banks at Laredo, the defendant bank being among the number, were accommodating themselves to border conditions, and kept two classes of banking and deposit accounts on their books; one being for the deposit and loan of American money, and one to handle Mexican money. When a deposit. was made of American money it was entered in the American deposit account, and when made in Mexican money it was entered in the Mexican account. All of the evidence and the canceled certificates (both being in the words of the certificate sued on)·show that the original deposit was in Mexican money, and that it was deposited in the Mexican account. However, while it cannot be successfully controverted that the original deposit was of Mexican money, certainly the plaintiff's repeated acceptance of certificates of deposit for Mexican money, and her knowledge of the system and custom of the bank, in running the two classes of accounts, deprive her of the right to claim a deposit payable as of the date of her last certificate in American money at the rate of one American dollar for two Mexican dollars, or in Mexican silver. She not only knew of the double system of accounts run by the bank, carrying herself both an American and Mexican account, .but she acquiesced in her deposit by placing it on the Mexican account, and by accepting the certificate sued on, and by accepting a part of the principal of the deposit, and probably all of the interest, in Mexican bank bills. It is true she claims that prior to 1914 she either got Mexican bank bills or Mexican silver dollars as she made requests. for them, but the whole of her testimony and the testimony of the other witnesses establish beyond a doubt in our minds the conclusion reached by the Court of Civil Appeals, that she received same in Mexican bank bills.

We do not think it necessary to pass upon the question as to whether or not the contention of defendant that the money, being in foreign currency, was purchased by it as a commodity, but only pass on and decide the

---

⊙=For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

case as being controlled by the contract under the known custom and usages of the defendant bank and other banks of Laredo.

The Mexican business of the defendant was conducted as though it were a bank doing business across the river in the territory of the republic of Mexico. This course of business was born of the necessity of the times and of their location. Any one in the least degree familiar with the trend of events in the last 20 or 30 years knows that our state has been flooded along the border with refugees from Mexico, driven out by hostile political environments. These people fleeing from their enemies brought with them, not only such personal property as they could transport, but such money of their country as they were possessed of. When they crossed the river they naturally turned to the American banks for the deposit of such funds. Under these conditions it was not only reasonable, but it became absolutely necessary, for the banks on this side of the Rio Grande river to provide a method of protecting their business. It appears to us that they adopted a reasonable method of so protecting themselves and at the same time providing a place of deposit for the Mexican funds of their customers.

As stated, Mrs. Barreda knew of this custom. She accepted the certificate of deposit payable in Mexican money; she accepted Mexican bank bills in the payment of that part of the principal paid her and in payment of interest on her various certificates for quite a number of years. We cannot conceive, therefore, that there was ever any liability on the part of defendant bank to pay her in American money at the rate of one dollar for every two of Mexican money, or that the contract of deposit was to be met by the payment of Mexican silver, and we think that the evidence clearly upholds the Court of Civil Appeals in their holding that she was to be paid in Mexican bank bills, as was customary at that time and since.

The limitation in the certificate placed upon "current funds" by the word "Mexican" does not make it the equivalent of Mexican silver or American money, but this limitation is to be construed in connection with the usage and custom of the bank, and certainly, where the party is shown to have known and acquiesced in such usage and custom and has contracted with such knowledge, the judgment arrived at is to be controlled by such contract in the light of and under such usage and customs.

In the case of Fleming v. Nall, Administrator, 1 Tex. 249, the Supreme Court holds the rule to be:

"A contract, in 1840, for the payment of $1,000 in the promissory notes of Texas, was equivalent to one hundred and fifty or two hundred dollars in specie. Is the construction, which would impose on the defaulting obligor, the payment of $1,000 in specie, justifiable by any sound rule of interpretation or principle of law? Such an exposition of the contract could not be given; so heavy a penalty could not be inflicted without incurring the reproach of one of the most eminent of judges, that for 'courts of justice to determine words against the intention of the parties, and against the generally received sense and acceptation of the words themselves, is laying a snare to entrap mankind.' Cowper, 720.

"A contract, for the payment of a sum in bank notes, or other paper currency may or may not be, equivalent to that sum in specie. The extent of the obligation depends on the meaning which usage affixes to the terms, at the time the contract was made or is expounded.

"Usage gives force and effect to language; and as terms are generally understood in the ordinary transactions of life, so should they be construed by courts of justice."

In the case of Smith v. Smith (Tex. Civ. App.) 234 S. W. 420, in which case the Supreme Court dismissed an application for writ of error (240 S. W. xxi) because of lack of jurisdiction, Justice Hamilton lays down the rule which we here approve:

"The rule is generally recognized that a valid usage or custom concerning the subject-matter of a contract, knowledge of which may be charged to the parties, is incorporated into the contract by implication. In the absence of a meaning written into the contract different from that implied by custom, the proof of such custom or usage is permitted to interpret the contract; not to vary its terms, but to express their meaning. Walker Grain Co. v. Denison Mill & Grain Co., 178 S. W. 555; Schaub v. Brewing Co., 80 Texas, 634, 16 S. W. 429; Yoakum v. Gossett, 200 S. W. 582; Consolidated Kansas City Smelting Co. v. Gonzales, 50 Tex. Civ. App. 79, 109 S. W. 946; 17 C. J. 492."

In the cause of Fowler v. Brantly, 14 Pet. 318, 10 L. Ed. 473, it is held:

"The known customs of the bank, and its ordinary modes of transacting business, including the prescribed forms of notes offered for discount, were matters of proof, and entered into the contract; and the parties to it must be understood as having governed themselves by such customs and modes of doing business; and this, whether they had actual knowledge of them or not; and it was especially the duty of all those dealing for the paper in question to ascertain them, if unknown. Such is the established doctrine of this court, as laid down in Renner v. Bank of Columbia, 9 Wheat. 581, Mills v. Bank of the United States, 11 Wheat. 431, and Bank of Washington v. Triplett, 1 Peters, 32, 33."

We cannot adopt this last-quoted decision in the exact language, because we believe that the parties must have had actual knowledge of such usage and custom, or to have been in a position where the presumption of knowledge would be charged against them.

The general rule in the case of contract is that the custom and usage must be so general

that both are presumed to be aware of them, or that they have actual knowledge of them, to be charged with having contracted with reference to such usage and custom. 27 R. C. L. §§ 9 and 10.

In this case the evidence clearly discloses that Mrs. Barreda was in possession of such facts as to the transaction of the banking business and its usage and customs as to have contracted with reference to such customs.

We therefore recommend to the Supreme Court that the judgment of the Court of Civil Appeals be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.