## COLUMBIAN CARBON CO. v. THOLEN.
### No. 11815.

Court of Civil Appeals of Texas. Galveston.
Feb. 6, 1947.

Rehearing Denied Feb. 27, 1947.

Austin Y. Bryan, Jr., and Ira P. Jones, Jr., both of Houston, for appellant.

Ewing Werlein and Presley E. Werlein, Jr., both of Houston, for appellee.

GRAVES, Justice.

This appeal is from a judgment of the 113th District Court of Harris County, rendered in part upon a jury's verdict on special issues and in part on independent findings of the court itself from the evidence, awarding appellee an aggregate of $6,326 as damages against appellant, resulting from its operation of its carbon-black plant about three-fourths of a mile southeast of appellee's home near Fairbanks, in Harris County, Texas, as the necessary result of which operation great quantities of processed carbon-black and soot were constantly emitted therefrom and deposited upon the appellee's property, to its material depreciation in value, and to the discomfort, annoyance, and inconvenience of himself and his wife.

Of such total, $2,000 was apportioned to the diminished value of the property, $4,000 to the unreasonable discomfort, annoyance, and inconvenience to the appellee's wife and himself in their persons, and the remaining $326 for interest on the two thousand dollar diminished-value sum, from the time of the infliction of such damage to the date of the trial below.

The court and jury, under a definition of that legal term, given by it to them, found on the facts that the operation of appellant's plant constituted a private nuisance against the appellee of a permanent character, which resulted necessarily from the voluntary and intentional operation of such plant by the appellant, after full knowledge upon its part that the same perforce had theretofore so caused, and would continue to cause, such injuries and damage to the appellee personally, and to his property.

The court also, in explanation of its stated definition to the jury of what constituted such a private nuisance as the appellee so declared upon in his suit, described the terms "permanent" and "temporary."

The definitions referred to, in his verbis, were these:

(1) "You are instructed that by the term 'nuisance' as used in this charge is meant any condition, brought about by one party in the use of his property, so unusual and excessive that it necessarily causes injury or damage or harm or inconvenience to another party in the use and enjoyment of his property, substantially, materially and unreasonably interfering with the latter's comfort and proper use and enjoyment of his property, taking into consideration the nature and use of the property of both parties and the character of community in which they are situated, and which condition would be substantially offensive, discomforting and annoying to persons of ordinary sensibilities, tastes and habits living in the locality where the premises are situated."

(2) "By the term 'permanent' as used in the foregoing charge is meant a condition of such a character and which exists under such circumstances that it will be presumed to continue indefinitely. By the term 'temporary' as used in this charge is meant any condition, which is not permanent."

In this court, as it likewise did below, the appellant very earnestly and ably attacks the recovery so allowed against it, upon what it urges to be a fundamental ground— that is, that there neither was nor could have been any liability against it in this suit without both allegations and proof of negligence on the part of the appellant in the construction, location, or operation of, its plant, none of which the appellee had made.

In other words, after correctly asserting that the appellee had made no such charges of negligence, it further pled and offered proof to substantiate these, among other details, of such overall defensive position as, in substance, are thus detailed in its brief:

"(a) Its carbon black plant, of the most modern construction and equipment known to the sciences, was constructed in a natural, reasonable and expected location for a carbon black plant—the Fairbanks oil field in Harris County, Texas. The construction, in similar manner, being prudently, carefully and reasonably conducted, following which the operation was in a reasonable, careful, prudent and non-negligent manner; and, therefore, in Texas, appellant's plant was not a nuisance in fact or per se, and it became necessary for appellee to plead and prove an unreasonable

use and operation of appellant's land, premises, and plant, amounting to negligence.

"(b) That the location of appellant's plant was in a natural, contemplated, and reasonable spot and point—to-wit: the source of its supply of raw material, the Fairbanks Oil Field—and therefore its operation in a non-negligent manner could not in law and fact become a nuisance.

"(c) Appellant's plant, being located in a natural, proper location, for a carbon black plant, to-wit: the Fairbanks oil field, the appellee has waived the right and is estopped to complain of the operation of appellant's plant, because appellee with full knowledge of the character of the area, an oil field, purchased his property and built his home.

"(d) Other sources of tremendous volume of free carbon, such as burning-pits, flares, and railroad engines, were at and adjacent to the property of the appellee, prior to appellant's entry into the field, and such sources have been throwing vast quantities of carbon into the air and onto appellee's property, with the required necessity of separation of sources and proximate cause, with the result that appellee's annoyances and inconvenience and damage, if any, not admitted by appellant, came from these other sources and not appellant's plant.

"(e) Appellant's operation is reasonable and proper and free of negligence and in accord with the custom and usage of other areas and industrial operations giving off smoke, gases, and soot, in that any loss of solid bodies, if any, in appellant's smoke is within the permissible ranges found as a fact by ordinances not to amount to annoyance or nuisance, in such cities as St. Louis and Pittsburgh.

"(f) Appellant's operation cannot first in law and fact be a nuisance, and secondly, a nuisance of a permanent nature, because appellant is spending large sums in improvement of known facilities for capturing carbon, with undisputed expectation of improvement approaching 100 per cent within the near future."

These quoted grounds of attack upon the theory of the cause, as so declared upon by the appellee, and submitted by the court to the jury under special issues deemed by it to embody all the material issues of fact raised by the pleadings and evidence from both opposing parties, were injected by it into all the proceedings of the trial; based thereon, it objected to the appellee's declaration of his cause of action for such a nuisance as he claimed under, because he charged no such negligent operation of its plant; it challenged the given special issues, the sufficiency of the evidence to sustain the jury's answers thereto, and submitted instead its own opposing definitions, specially-requested charges of the court, and inquiries seeking to elicit the facts as alleged in its opposing pleadings.

It would be supererogatory to undertake tracing the appellant's extended pursuit down through the whole trial, including a great bulk of testimony presented by it as in demonstration of its stated defense against the principles of law and procedure governing the cause, as so tendered by the appellee under his pleadings and testimony, and accepted by the trial court as establishing the kind of private nuisance he so rested his cause upon.

Suffice it to repeat that the gist of appellant's entire position was that, under the law of Texas, no such a recovery as was sought here, without allegations and proof of negligence against the appellant in either the construction, location, or operation of its plant, would lie, when, under the self-evident condition of the record, and the direct concession of the appellee himself, both in the trial court and on this appeal, there were neither such allegations nor proof.

Among many others, perhaps the leading authorities the appellant—in the main—depends upon for the support of such position, are these: Cameron Compress Co. v. Whitington, Tex.Com.App., 280 S.W. 527; City of Corsicana v. King, Tex.Civ.App., 3 S.W.2d 857; Gulf, C. & S. F. Ry. Co. v. Oakes, 94 Tex. 155, 58 S.W. 999, 52 L.R.A. 293, 86 Am.St.Rep. 835; Galveston H. & S. A. R. v. Currie, 100 Tex. 136, 96 S.W. 1073, 10 L.R.A., N.S., 367; Gotcher v. City of Farmersville, 137 Tex. 12, 151 S.W. 2d 565; Consolidated Kansas City Smelting & Refining Co. v. Gonzales, 50 Tex.Civ.App.

79, 109 S.W. 946; 27 R.C.L., 160; Barreda v. Milmo Nat. Bank, Tex.Com.App., 252 S.W. 1038; King & McHard v. Columbian Carbon Co., 5 Cir., 152 F.2d 636; Sun Oil Co. v. Robicheaux, Tex.Com.App., 23 S.W. 2d 713; Sherman Gas & Electric Co. v. Belden, 103 Tex. 59, 123 S.W. 119, 27 L.R.A., N.S., 237; Turner v. Big Lake Oil Co., Tex.Sup., 96 S.W.2d 221; Prosser on Torts, pages 550, 557, 561, 562, 582, 584; Restatement of the Law of Torts, Vol. 4, p. 252; Vol. 22, Texas Law Review (Prosser), April, 1942, No. 4, Nuisance without Fault.

In much respect, it is held that appellant's stated position and its cited authorities in support thereof do not control this cause, but that there is in our authorities a well-defined distinction between the class of cases to which its position applies and the facts and supporting testimony herein presented by the appellee in support of the trial court's judgment; that is, in brief, this: It is true, as indicated, this suit was not brought to recover damages growing out of the negligent construction, operation, or location of appellant's plant, but to recover for the consequences from a voluntary and intentional nuisance, which—it was alleged and found—the operation of its carbon black plant, situated as and where it was, cast upon him and his property; that is, that the intentional maintenance of the plant inflicted damages that resulted from a substantial invasion of appellee's property and his personal privileges, materially and unreasonably interfering both with his family's comfort and the use and enjoyment of the property to which they were entitled.

■ In Texas, contrarily to the appellant's view, it is not thought that negligence—in the sense and respects so insisted upon by it as being indispensable—is a requisite to liability for such a private nuisance as was found to have grown out of the voluntary, intentional conduct on the part of this appellant in operating its plant—situated as it was with reference to the appellee's home, with the consequences it knew were inevitably resulting and would indisputably continue to so result therefrom.

■ To state the distinction another way, it is only where an act or a condition can become a nuisance solely by reason of the negligent manner in which it is performed or permitted, that no right of recovery can be shown independently of the existence of negligence, as appellant here contends. That rule is thus stated in 31 Texas Jurisprudence, page 421, Sec. 11:

"As a general rule, proof of negligence is not essential to imposition of liability for the creation or maintenance of a nuisance. That is so although the nuisance complained of may be the consequence of negligence. A nuisance does not rest on the degree of care used, but on the degree of danger or annoyance existing even with the best of care. Consequently, if a nuisance exists, the fact that due care was exercised against its becoming a danger or annoyance is no excuse. However, where the act or condition in question can become a nuisance only by reason of the negligent manner in which it is performed or permitted, no right of recovery is shown independently of the existence of negligence."

The above stated declaration of the different rule as to the character of nuisance herein recovered for is well supported by Vol. 4, pp. 214-263, Restatement of the Law of Torts, and by many appellate holdings in Texas, among which are these: Olivas v. El Paso, Tex.Civ.App., 38 S.W.2d 165; Marvel Wells, Inc., v. Seelig, Tex. Civ.App., 115 S.W.2d 1011; Hamm et al. v. Briant, 57 Tex.Civ.App. 614, 124 S.W. 112; City of Amarillo v. Ware, 120 Tex. 456, 40 S.W.2d 57; Turner et al. v. Big Lake Oil Co., 128 Tex. 155, 96 S.W.2d 221.

(3) The jury in response to the special issues, instructions, and definitions—including the quoted two as to a private nuisance, permanent in character—made, among others, findings of which those deemed most material, in substance, were these:

The jury found, in substance, (1) that carbon black or soot, escaping solely from the plant of the appellant, had fallen and deposited itself in substantial quantities on appellee's property; (2) that the same constituted a nuisance; (3) that such condition began May, 1943, and was con-

tinuous from that time; (4) that such condition was permanent and proximately caused injury and damages to the appellee's property in such a manner as to cause substantial depreciation in the value thereof, and naturally and proximately caused material personal discomfort, annoyance, and inconvenience to the appellee and his wife in the use and enjoyment of the premises; (5) that carbon black, or soot, from burning pits, gas flares, and trains (other sources) had not been deposited on the property of the appellee since the operation of the appellant's plant began, and had not contributed to cause or be the proximate cause of any condition complained of by appellee; (6) that the personal discomfort, annoyance, and inconvenience complained about by appellee were not those to be expected, natural, and usual, in living in, about or adjacent to a developed oil field, having industries connected with the oil business located therein; (7) that appellee's property was worth $2,000.00 less after the conditions in question began, and that he had suffered damages, because of personal discomfort, annoyance, and inconvenience therefrom.

A careful review of the statement of facts discloses ample support for all these findings; they must, therefore, be held to have been the facts underlying the controversy throughout all the features they comprehended.

■ In the light of these facts, the soundness of the court's quoted definitions of the law as controlling the cause of action herein, seems to this court to have been made plain. It, therefore, finds no fault with, but approves them both as being declaratory of the law as announced in such authorities, in addition to those last cited supra, as these: 46 Corpus Juris, page 664, as follows:

"A distinction has been made between acts lawful in themselves done by one upon his own premises which may result in injury to another if not properly done or guarded, and those which in the nature of things must so result; in the former case, a person could only be made liable for actual negligence in the performance of the act or mode of maintaining it, while in the latter he would be liable for all consequences of his acts, whether guilty of negligence or not."

Also King v. Columbian Carbon Co., 5 Cir., 152 F.2d 636; Restatement of the Law of Torts, Sec. 822; Prosser on Torts, page 561.

Under the now well-settled law of Torts, the cited authorities reflect, as applied to the kind of private nuisance declared upon by the appellee in this instance, and as explained to the jury in the trial court's quoted definitions, that in order for the jury to find that the operation of the appellant's plant was a nuisance, subjecting it to liability for damage, it was necessary for the jury to find that the condition brought about by the appellant in the use of its property was (1) so unusual and excessive that it necessarily caused injury or damage or harm or inconvenience to appellee in the use and enjoyment of his property, substantially, materially, and unreasonably interfering with the latter's comfort and proper use and enjoyment of his property, taking into consideration the nature and use of the property of both parties and the character of the community in which they are situated; (2) that such condition was substantially offensive, discomforting, and annoying to persons of ordinary sensibilities, tastes, and habits, living in the locality where the premises are situated; (3) to take into consideration the nature and use of the property of both the appellant and the appellee, and the character of the community in which they are situated.

■ If, therefore, the recited findings of those essentials, as well as of those already given, were supported by the evidence, as this court finds they were, the cause for liability against the appellant was fully made out.

■ (4) Under its point 25 appellant urges that the trial court erred in overruling its motion for a new trial on the ground of alleged misconduct by the jury in a large number of alleged particulars, the substance of which was that, prior to answering any of the special issues submitted to it, or considering the evidence and instructions of the court, its members discussed how much they would give the ap-

pellee, fixed the amount at $6,000, also discussed and determined that appellee's attorney would get 25 to 50 per cent of what he recovered, and further arbitrarily answered certain ones of the special issues in such way as to effectuate a recovery for the appellee, without regard to the evidence before them; and, finally, that four of them agreed with the other eight to answer the issues submitted contrary to their own convictions, in order that they might be released from the jury service, because of anxiety about their private affairs.

After literally cross-examining most of the jurors in the hearing for a new trial, and otherwise going comprehensively into all the controversies it raised on the facts, the trial court overruled appellant's motion, without any express findings-of-fact thereon.

After reviewing the record, this court has no hesitancy in approving that action, especially upon these two conclusions: (1) The evidence was indubitably sufficient to support—if indeed it did not require—findings on the facts that there was no misconduct of the jury whatever in any one of the particulars so alleged by appellant; (2) it was shown that the jury discussed all the issues seriatim, and thereafter finally wrote down their answers to each of them, before voting thereon; that they made no prior agreement with respect to finding for the appellee, nor did they discuss the subject of his attorney's fees in advance of having so determined and put in writing their answers to all the inquiries submitted to them.

Such findings will, therefore, on appeal be deemed to have been made by the court below as in support of its judgment overruling the motion for a new trial.

Under these authorities, and such presumed findings on the facts, there was in law no misconduct: Yellow Cab Co. of Galveston v. Word, Tex.Civ.App., 125 S.W. 2d 1050; Waggoman v. Fort Worth, 124 Tex. 325, 76 S.W.2d 1005; Monkey Grip Rubber Co., v. Walton, 122 Tex. 185, 53 S.W.2d 770; Maryland Casualty Co. v. Hearks, Tex.Sup., 190 S.W.2d 62; Booth v. H. P. Drought Co., Tex.Civ.App., 89 S.W.2d 432; Tumlinson v. San Antonio Brewing Ass'n, Tex.Civ.App., 170 S.W.2d 620, writ refused; Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462; Rule 327, Texas Rules of Civil Procedure; St. Louis, B. & M. R. Co. v. Cole, Tex.Com.App., 14 S.W.2d 1024; Edens-Birch Lbr. Co. v. Wood, Tex.Civ.App., 139 S.W.2d 881, writ dismissed, judgment correct; James A. Dick v. Yanez, Tex.Civ.App., 55 S.W.2d 600, writ refused.

There are a number of other points relied upon by the appellant, but it is thought none of them point out reversible error; it is further determined that the trial court properly refused the requested definitions, special issues, and charges of the appellant, mainly upon the consideration that none of them were applicable or material to the character of private nuisance so involved in this cause.

These conclusions require an affirmance of the judgment; it will be so ordered.

Affirmed.