**BROWN SUPPLY COMPANY, a Corporation, Appellant,**

v.

**Grady LESTER et al., Appellee.**

No. 6676.

Court of Civil Appeals of Texas.

Amarillo.

June 3, 1957.

Rehearing Denied July 1, 1957.

McWhorter, Cobb & Johnson, Lubbock, H. E. Griffith, Lubbock, of counsel, for appellant.

A. W. Salyars and William R. Shaver, Bryan B. Dillard, Lubbock, for appellees.

CHAPMAN, Justice.

Appellees, Grady Lester and wife, Bonnie Lester, and their three children, Roy Duke Lester, Weldon Eugene Lester and David Lee Lester, suing through their father as next friend, were awarded judgment in the court below on June 30, 1956, against Brown Supply Company, a Texas corporation, following a jury trial and verdict rendered by the jury on June 28, 1956, from allegations based on the theory of their right to damages for nuisance allegedly created by the Brown Supply Company.

By their suit the Lesters sought damages for the decreased value of their land and premises as well as the personal damages for discomfort, annoyance and inconvenience.

The jury found, from the issues submitted that a nuisance existed, that the same was permanent, that the Lester property had been damaged $4,000 and that appellees collectively had been damaged a total of $2,500. From the verdict judgment was awarded Grady Lester and wife, Bonnie Lester, in the total sum of $5,000 and the minor appellees were awarded a judgment of $1,500. It is from this judgment of the trial court that appellant has perfected its appeal.

Brown Supply Company, appellant, is engaged in the manufacture and sale of concrete and aluminum irrigation pipe and related materials, including culverts used for road building purposes. Some of the materials are manufactured and some fabricated into the finished product on the company's premises. In connection with the business the company maintains a supply yard for storage, sale and delivery of their products. Beginning about July 1952 the company's business was conducted upon lots one, two and four of the Martin-Oliver Addition to the city of Lubbock. Lots one and two are separated from lot four on the north part of the block by lot three and on the south part of the block by lots three and five. Lot four is an "L" shaped lot that joins lot five on the west and north and ties into lot three where lot five ends on the north. These lots all front on 33rd Street in the city of Lubbock and all but lot five extend north to the right of way of the Ft. Worth and Denver Railway Company. Lot five is shorter in length than the lots it joins. It joins lot three on the west thereof and joins lot four, the "L" shaped lot, both on the east and south part of lot four. Lot five is approximately 63 feet wide and 134 feet long. It has a residence which was constructed on it about 1950 and the property was acquired by appellee, Grady Lester, about November 24, 1954. About January 24, 1955, it was occupied by him and his family as their residence. At this time Brown Supply Company owned and was using for their business lots one, two and four. In August 1955, said company acquired a leasehold interest in lot three joining lot five on the east and soon extended its use area to include lot three and made further and additional use of lot four.

At all times pertinent hereto the area of the city of Lubbock here under consider-

ation and lot six, a large lot to the west thereof was zoned for industrial purposes, and had been so zoned since April 21, 1952. No contention has been made in the record before us that Brown Supply Company in their operations violated any of the zoning regulations. Further, under the zoning regulations effective at all times pertinent hereto any of the area above described used for residence purposes was a non-conforming use. All lots mentioned are contiguous tracts without alleyways or other surface easements.

Immediately to the north of the lots above named is the right of way of the Ft. Worth and Denver Railway Company. Joining the railway on the north is the section of the city of Lubbock occupied by the colored people of the city and known as the "Flats." Immediately to the south of the Lester property and the Brown Supply Company property is the block that fronts on 34th Street, which is the highway from Lubbock to Slaton, an extensively traveled highway. Immediately east of the lots named is the Trailer Sales and Equipment Company, manufacturers of large tandem trailers, manufactured principally by Hyde Manufacturing Company and South Plains Trailer Company; a lumber yard; and a warehouse for storing of aluminum tubing. To the southeast is located a large automobile auction house, a mattress factory and various other businesses and storage places. At the time the Lesters acquired their property the general area, including land completely surrounding the area involved in this law suit was being developed for commercial and industrial purposes.

Appellant has assigned twenty-one points of error, most of them based on its objections to the court's definition of "nuisance" and the definition's application to the issues submitted. The case was submitted on six issues but the basic and controlling issue is:

"Do you find from a preponderance of the evidence that the manner and mode of operation of defendant's business since February 1, 1955 constitutes a nuisance, as that term has been herein defined?"

The following definition of the term "nuisance" was given:

"You are charged that by the term 'nuisance' as used in this charge, is meant any condition, brought about by one party in the use of his property, so unusual and excessive that it necessarily causes damage or harm or inconvenience to another party in the use and enjoyment of his property, substantially, materially and unreasonably interfering with the latter's comfort, and proper use and enjoyment of his property, taking into consideration the nature and use of the property of both parties and the character of community in which they are situated, and which condition would be substantially offensive, discomforting and annoying to persons of ordinary sensibilities, tastes, and habits, living in the locality where the premises are situated."

In its objections to the Court's definition of "nuisance" appellant insisted that in the light of the evidence in this case it was entitled to a positive instruction by the Court that it had the legal right to use its property in a manner consistent with the light industrial zone in which it had been placed and that such operation could constitute a nuisance only in the event such use was conducted in an unreasonable, reckless manner and in willful disregard of the rights of the Lesters. Putting it in another way, their contention had the effect of saying such operation could constitute a nuisance only in the event it was conducted in a negligent manner. Appellants also objected to the failure to give its requested issue inquiring of the jury whether the injuries and damages accrued without negligence on the part of Brown Supply Company.

The appellees, in their brief, answer appellant's contention just above related by saying:

"The defendant contended that there must be proof of negligent acts before they could be liable for the nuisance created, which is in substance what appellant is contending in this cause by his requested instruction that appellees should have shown that appellant was using the property in a reckless and wanton manner."

In view of the respective contentions of the parties concerning negligence we believe it will be helpful to follow the example of Mr. Justice Waller of the Fifth Circuit Court of Appeals in King v. Columbian Carbon Co., 152 F.2d 636, and consider some of the principals dealing with the subjects of nuisances and negligence and their relation to each other before applying the law to the particular facts of this case.

"A private nuisance" has been defined as "anything done to the hurt or annoyance of the lands, tenements, or hereditaments of another; that produces damages to but one or a few persons and cannot be said to be public." King v. Columbian Carbon Company, 152 F.2d 636, 638; 2 Bouv.Law Dict., Rawle's Third Revision, P. 2379.

"The terms 'nuisance' and 'negligence' are not synonymous. Liability for negligence is based on want of proper care while one who creates or maintains certain types of nuisances may be liable for resulting injury regardless of the degree of care or skill exercised to avoid injury. The existence of nuisance does not always depend upon degree of care used but upon the degree of danger or damage existing even with the best of care. *In the case of nuisances not created by negligence, ordinarily the question of care or want of* care *is not involved.*" King v. Columbian Carbon Company. (Emphasis supplied.)

"What is a reasonable use or whether a particular use is a nuisance cannot be determined by any fixed general rules but depends upon the facts of each particular case, such as location, character of neighborhood, the nature of the use, extent and frequency of the injury, and the effect upon enjoyment of life, health, and property of the plaintiff." King v. Columbian Carbon Company.

"A nuisance may be, and often is, the consequence of negligence. Acts or omissions which constitute negligence may also give rise to a nuisance." King v. Columbian Carbon Company, and authorities therein cited.

"As a general rule, proof of negligence is not essential to imposition of liability for the creation or maintenance of a nuisance. This is so although the nuisance complained of may be the consequence of negligence. A nuisance does not rest on the degree of care used, but upon the degree of danger or annoyance existing even with the best of care. Consequently, if a nuisance exists, the fact that due care was exercised against its becoming a danger or annoyance is no excuse. *However, where the act or condition in question can become a nuisance only by reason of the negligent manner in which it is performed or permitted, no right of recovery is shown* independently of the existence of negligence." King v. Columbian Carbon Company, citing 31 Tex.Jur., Sec. 11, P. 421; Abilene and S. R. Ry. Co. v. Herman, Tex.Civ.App., 47 S.W.2d 915; 29 Am.Jur., Sec. 24, P. 305. (Emphasis supplied.)

Lester's pleadings, and the testimony they relied on for recovery had to do with actions and conduct of appellant on its own premises, performed in the operation of its own business, within the rules applicable to the zoning of that particular territory. One of their principal complaints was of glare from aluminum pipe stacked immediately adjacent to their property. Obviously, if the glare from such stacks constituted or contributed to constitute a nuisance it was *only by reason of the negligent*

*manner in which it was performed or permitted.* With all the territory appellant had on which it could have stacked the pipe they certainly could have stacked it further away from appellees' premises. Additionally, the pictures introduced in evidence and brought forward in the record to us indicate much of the glare would be eliminated by stacking the pipe with the ends toward the Lester property. (Emphasis supplied.)

Another principal complaint made by the Lesters was of arc welding, which Lester testified was performed within fifteen feet of his property. Appellant denied the latter accusation, but if it did do arc welding in such proximity to the Lester property it could have constituted a nuisance *only by reason of the negligent manner in which it was performed or permitted.* (Emphasis supplied.)

In 46 Corpus Juris at page 664 under the title "Nuisance" a clear distinction is pointed out in acts such as those above described and those situations where injury results from the very nature of the operations complained about, such as carbon black plants. The following is the statement:

"A distinction has been made between acts lawful in themselves, which may result in injury to another if not properly done or guarded, and those which in the nature of things must so result; in the former case, a person could only be liable for actual negligence in the performance of the act or mode of maintaining it, while in the latter, he would be liable for all the consequences of his acts, whether guilty of negligence or not." See, also, 66 C.J.S. Nuisances § 11.

Our case, patently is one of the "former" type cases referred to in the above quote; that is, acts lawful in themselves, which may *result in injury to another if not properly done or guarded.* (Emphasis ours.)

It is just as clear that the latter type referred to in the above definition has to do with cases of nuisance such as carbon black plants. In the case of Columbian Carbon Co. v. Tholen, Tex.Civ.App., 199 S.W.2d 825, cited by appellees in support of their contention that the definition of nuisance given by the court therein was proper in the case at bar, we have an operation from which *in the very nature of things* injury must result to those in the area over which its refuse in the form of carbon black and soot settled. This is true even though the plant was of the most modern, had the best equipment known to the sciences, and its operation was conducted in a reasonable, careful, prudent and nonnegligent manner. In that case the carbon black company would be liable for all the consequences of its acts, whether guilty of negligence or not, so the definition therein given was proper for that type case. (Emphasis supplied.)

The above statement from Corpus Juris has been quoted with approval both in King v. Columbian Carbon Co., supra, and Columbian Carbon Company v. Tholen, supra, and seems to be the law in this state. The Tholen case further says:

"It is only where an act or a condition can become a nuisance solely by reason of the negligent manner in which it is performed or permitted, that no right of recovery can be shown independently of the existence of negligence." [199 S.W.2d 828.]

Under the authority of the two carbon company cases above cited and the authority of the statement in Corpus Juris cited by them a recovery for a nuisance under facts such as we have at bar would require pleading, proof and findings of negligence, or at least a definition of nuisance that would advise the jury of such burden on the part of the Lesters. Appellees did not plead negligence. In fact, as is shown by the above quote from their brief, they have taken the position they were under no burden to so plead or have the case so submitted.

The number one issue submitted by the court below, and quoted above, was the basic issue upon which appellees' recovery depended. Obviously an answer by a jury as to whether the manner and mode of operation of the Brown Supply Company's business constituted a nuisance would have been an answer to a legal question unless the Court gave a proper legal definition of the term "nuisance" as applicable to the facts of this particular case. From what we have said above it follows that we recognize the definition of the term "nuisance" given herein as proper in cases such as the carbon black company cases, where injury must result from the very nature of things. But we believe it was too restrictive given in connection with the nuisance issue above quoted for the type case here under consideration. Appellants were operating their business in an industrial area consistent with the industrial zoning thereof. At least some of the acts which contributed to the nuisance complained about were acts that could contribute to a nuisance only by reason of the existence of negligence in the manner in which they were performed or permitted. If such acts contributed to the nuisance, negligence would have to have been alleged. Mr. Justice Waller, speaking for the Circuit Court of Appeals of the Fifth Circuit in the case of King v. Columbian Carbon Company, supra said:

> "Our conclusion is that nuisances may exist without negligence and in such situations it, of course, is not requisite that negligence be alleged, but in all cases where negligence has created, *or contributed to the creation of, the nuisance,* such negligence should be alleged. (Emphasis supplied.)

Other assignments of error were urged but directly or indirectly they go to the submission of the basic issue of nuisance and the definition given in connection therewith. Believing that no useful purpose would be served by further discussion the judgment of the court below is reversed and the case remanded for another trial.