# IN THE SUPREME COURT OF TEXAS

No. 17-0332

BARROW-SHAVER RESOURCES COMPANY, PETITIONER,

v.

CARRIZO OIL & GAS, INC., RESPONDENT

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE TWELFTH DISTRICT OF TEXAS

JUSTICE BOYD, dissenting.

Like JUSTICE GUZMAN, I would reverse the court of appeals' judgment. I admit that doing so seems counterintuitive in light of the common law's longstanding commitment to "respect and enforce the terms of a contract that the parties have freely and voluntarily made." *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 232 (Tex. 2019). But just as the common law honors the freedom of contract, it also respects the role that industry custom and usage plays in the formation and construction of written agreements. As we explained long ago, "The law seems to be that, where there is nothing in the agreement to exclude the inference, the parties are always presumed to contract in reference to the usage or custom which prevails in the particular trade or business to which the contract relates; and the usage is admissible for the purpose of ascertaining with greater certainty what was intended by the parties." *Dwyer v. City of Brenham*, 7 S.W. 598, 599 (Tex. 1888) (internal citations omitted). So "when a contract is 'silent

or obscure as to a particular subject,' industry usage may 'become a portion of [the contract] and constitute a supplement to it.'" *Luling Oil & Gas Co. v. Humble Oil & Ref. Co.*, 191 S.W.2d 716, 724 (Tex. 1945) (quoting *Trinity Portland Cement Co. v. Lion Bonding & Sur. Co.*, 229 S.W. 483, 484–85 (Tex. Comm'n App. 1921, judgm't adopted)).[1] As best I can tell, the common law gives effect to industry custom and usage "regardless of whether there appears to be any ambiguity in the words." *Sunbeam Corp. v. Liberty Mut. Ins. Co.*, 781 A.2d 1189, 1193 (Pa. 2001).

I think it unlikely, if not implausible, that the Texas oil-and-gas industry honors a "usage or custom" that prohibits a party from unreasonably withholding its contractually required consent. But Barrow-Shaver created a fact issue by alleging and submitting evidence that it does. *MortgageAmerica Corp. v. Am. Nat'l Bank of Austin*, 651 S.W.2d 851, 859 (Tex. App.—Austin 1983, writ ref'd n.r.e.) ("The existence of an industry-wide 'usage of trade' is a fact question to be determined by the fact finder . . . ."); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 222(2) (1981) [hereinafter RESTATEMENT] (recognizing that the existence and scope of an industry custom or trade usage present questions of fact). And the jury agreed with Barrow-Shaver. I agree with JUSTICE GUZMAN that we must defer to the jury's finding unless the trial court harmfully erred in admitting or excluding evidence on that issue. *See Nissan Motor Co. v. Armstrong*, 145 S.W.3d 131, 144 (Tex. 2004).

Unlike JUSTICE GUZMAN, however, I would hold that the trial court harmfully[2] erred by

---

[1] *See also Schaub v. Dall. Brewing Co.*, 16 S.W. 429, 430 (Tex. 1891) ("Custom and usages of trades are admitted in evidence for well-defined purposes, *to explain incidental rights of parties* appertaining to the particular trade in question, to construe contracts in relation thereto, and to ascertain the meaning of words and expressions therein, as well as for many other purposes.") (emphasis added).

[2] *See* TEX. R. APP. P. 41; *McCraw v. Maris*, 828 S.W.2d 756, 757 (Tex. 1992).

excluding evidence of the parties' negotiations, including the draft agreements they exchanged before executing their final written contract. Contracts may only include industry usage or customs that are "so general that both [parties] are presumed to be aware of them, or that they have actual knowledge of them, to be charged with having contracted with reference to such usage and custom." *Barreda v. Milmo Nat'l Bank*, 252 S.W. 1038, 1039–40 (Tex. Comm'n App. 1923). A usage cannot be enforced if one party "knows or has reason to know that the other party has an intention inconsistent with the usage." RESTATEMENT § 221. As the United States Supreme Court has explained, parties may impliedly incorporate industry usage only "if nothing is said to the contrary." *Robinson v. United States*, 80 U.S. 363, 366 (1871).

Here, Carrizo offered evidence that the first draft of the parties' written agreement expressly prohibited Carrizo from unreasonably withholding its consent, consistent with Barrow-Shaver's alleged industry usage. But Carrizo insisted that provision be deleted from the written contract, and Barrow-Shaver agreed, even though it considered the revision a major change that meant Carrizo could withhold its consent for any reason. This evidence tends to establish that Barrow-Shaver knew Carrizo's intent was *inconsistent* with the alleged industry usage, and thus rebuts the presumption that the parties impliedly incorporated the alleged industry usage in their contract. The jury never heard Carrizo's evidence regarding the parties' prior drafts and negotiations, however, because the trial court sustained Barrow-Shaver's objection and excluded it. I conclude the trial court erred by excluding the negotiations evidence. Carrizo was entitled to submit surrounding-circumstances evidence to rebut the presumption that the parties contracted with respect to the alleged industry usage.

To establish the alleged industry custom or usage prohibiting Carrizo from unreasonably

withholding its consent, Barrow-Shaver had to establish that the usage was "so regularly observed in place, vocation, trade, or industry so 'as to justify an expectation that it will be observed with respect to a particular agreement.'" *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc.*, 907 S.W.2d 517, 522 n.6 (Tex. 1995) (per curiam) (quoting RESTATEMENT § 222(1), and citing TEX. BUS. & COM. CODE § 1.205(b)). To meet that burden, Carrizo had to rely on extrinsic evidence of the surrounding facts and circumstances "bearing on the parties' objective intent," *URI, Inc. v. Kleberg Cty*, 543 S.W.3d 755, 768 (Tex. 2018), to establish "the facts within the contemplation of the parties at the signing" of the agreement, *Nat'l Union Fire*, 907 S.W.2d at 521.

The issue of "whether the parties contracted with reference to a usage is determined on the basis of *all* the circumstances, and a usage may be excluded by the *same type of proof* which would include it." RESTATEMENT § 221 cmt. d (emphases added). Such evidence of surrounding circumstances includes "evidence of the situation and relations of the parties, the subject matter of the transaction, *preliminary negotiations and statements made therein*, usages of trade, and the course of dealing between the parties." *Id.* § 212 cmt. b (emphasis added); *see also* 25 C.J.S. *Customs and Usages* §§ 27 ("Any determination of meaning or ambiguity [in a contract term of phrase] should only be made in the light of the relevant evidence of the situation and relations of the parties, the subject matter of the transaction, *preliminary negotiations and statements*, usages of trade, and the course of dealing between the parties.") (emphasis added), 29 (explaining that the extrinsic evidence of surrounding circumstances necessary to establish a "specialized industry or trade term" in a contract "includes proof of *negotiations between the parties*, their post-contract conduct, and general trade practice") (emphasis added).

4

Just as Barrow-Shaver could rely on extrinsic surrounding-circumstances evidence of industry custom to explain or supplement the parties' written contract, Carrizo could rely on extrinsic surrounding-circumstances evidence of the parties' negotiations and draft agreements to establish that the parties did not intend to incorporate that industry custom in their contract. *See* David H. Moore, *The Parol Evidence Rule and the United Nations Convention on Contracts for the International Sale of Goods: Justifying Beijing Metals & Minerals Import/Export Corp. v. American Business Center, Inc.*, 1995 B.Y.U. L. REV. 1347, 1354–55 (1995); *see also City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 519 (Tex. 1968) (considering parties' negotiations and drafts as part of the "surrounding circumstances" to "settle the meaning of the contract"); 12 WILLISTON ON CONTRACTS § 34:11 (4th ed.) ("It is not necessary that the parties state in terms that the usage is not adopted as part of the contract if they otherwise make their intention manifest.").

I would therefore remand this case for a new trial, at which the jury should hear all of the evidence regarding the surrounding circumstances—including the evidence regarding the parties' negotiations and draft agreements—before deciding whether the parties mutually intended to incorporate the alleged industry usage. And because the jury must decide the breach-of-contract claim in the new trial, I would remand Barrow-Shaver's fraud claim as well. If the new jury finds that the agreement included the industry usage—and thus Carrizo breached the contract by unreasonably withholding its consent—the jury would not need to reach the fraud claim. But if the jury finds that the parties did not incorporate the industry usage, then the jury should be allowed to consider the fraud claim.

In this respect, I disagree with the Court's opinion. If the parties did not incorporate

industry usage into their agreement, and Carrizo thus did not breach the contract, Barrow-Shaver *could* still recover for fraud. The contract says that Barrow-Shaver cannot assign its interest unless it has Carrizo's "express, written consent," but it is completely silent on whether, when, or why Carrizo could or would withhold its consent. It does not prohibit Carrizo from unreasonably withholding its consent, but—contrary to the Court's assessment—neither does it permit Carrizo to withhold its consent for any or no reason. It is simply silent on that issue.

Barrow-Shaver alleged and submitted evidence that Carrizo fraudulently induced Barrow-Shaver to enter into the contract by repeatedly promising that it would "work with" Barrow-Shaver and provide its consent if requested. Because the contract is completely silent on whether Carrizo could or would "work with" Barrow-Shaver to provide its consent, Carrizo's oral promises did not directly contradict the contract. And although Barrow-Shaver could have insisted on the original language prohibiting Carrizo from unreasonably withholding its consent, it is not "extremely unlikely" that it relied on Carrizo's oral promises to grant consent. So the "red flags" on which the Court relies, *ante* at __, are insufficient to render Barrow-Shaver's reliance unjustifiable as a matter of law. *See JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018); *Grant Thornton, LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010).

Because the trial court erroneously excluded evidence that goes to the heart of both the breach-of-contract and fraud claims, I would reverse the court of appeals' judgment and remand for a new trial on both claims. I respectfully dissent.

                                     _____

                                     Jeffrey S. Boyd

                                     Justice

Opinion delivered: June 28, 2019