**SOUTHWESTERN BELL TELEPHONE COMPANY, Appellant,**

v.

**E. M. WILLIE et al., Appellees.**

No. 10687.

Court of Civil Appeals of Texas.

Austin.

Oct. 21, 1959.

On Motion for Rehearing Nov. 18, 1959.

Rehearing Denied Dec. 9, 1959.

Camp & Camp, Cameron, Landon T. Carlson, Dallas, Dan Felts, J. Malcolm Robinson, Austin, for appellant.

Smith & Segrest, Waco, Jack W. Prescott, Cameron, for appellees.

HUGHES, Justice.

This suit was brought by E. M. Willie against Southwestern Bell Telephone Company to recover damages to real estate. Southwestern Bell joined Belfalls Electric Cooperative, Inc., as a party defendant.

In a nonjury trial judgment was rendered that appellee Willie recover of Southwestern Bell the sum of $900, interest and costs, and that Willie and South-

western Bell take nothing as against Belfalls Electric.

Appellant's first point is that the Trial Court used an improper method in assessing damages.

Appellee Willie's pleading described 136½ acres of land which he owned and alleged that appellant had, without lawful authority, committed the following trespasses thereon:

"(1) Cut and destroyed sixty-five (65) valuable trees on said property.

"(2) Cut the tops from and practically destroyed fifteen (15) valuable trees on said property.

"(3) Cluttered said premises with dead tree limbs, stumps and other trash and debris.

"(4) Defendant errected certain posts and telephone lines across Plaintiff's property without the authority or consent of Plaintiff."

These acts were alleged to have caused general damages in the sum of $999, the recovery of which was sought.

The evidence discloses that the trees destroyed or mutilated were shade or ornamental trees and there is no evidence that such trees had timber or any detached value.

The measure of damages in such cases is, as appellant states, the difference between the value of the land immediately before and immediately after the injury. 13 Tex.Jur. p. 142, p. 159, Cummer-Graham Co. v. Maddox, 155 Tex. 284, 285 S.W.2d 932, Galveston, H. & S. A. R. Co. v. Warnecke, Galveston, 1906, 43 Tex.Civ.App. 83, 95 S.W. 600.[1]

Appellant contends that there is no testimony as to the value of the land before the

---

1. In McCormick on Damages (1935) p. 167, it is stated:
   "If the property is not taken or destroyed, but merely injured, the award of damages is not the full value but only the diminution in value by the injury."

cutting of the trees occurred and after the cutting occurred.

We quote the following testimony of appellee Willie:

"Q. What do you say that you have been damaged Mr. Willie? A. Well, as far as money, of course money is a whole lot, but it wouldn't repay for the trees and things because I bought it for that purpose and they cut the main big trees that I wanted down there and trimmed up several of them right there in front of the house that made it look pretty ugly.

"Q. Well, how much do you feel that you have been damaged Mr. Willie? A. Well, I don't know, up in money it is a whole lot.

"Q. The Court is interested in figures. That is what we are trying this law suit for. A. Well, a Thousand Dollars or better, around nine hundred to a thousand, between a thousand and nine hundred to a thousand dollars.

"Q. Is it your opinion that the value of your place has been reduced by that amount?

*    *    *    *    *    *

"Q. I believe my question Mr. Willie was, is it your opinion that the value of your place has been reduced by that amount by reason of the cutting, trimming, etc., of these trees? A. Yes, sir."

As we understand the record the only objection made by Southwestern Bell to the above testimony was that it is not the proper method of proving damages.

Mr. Willie was cross examined at length by appellant but he was not asked to explain his testimony that the value of his place had been reduced in value by about $1,000 as a result of the cutting and trimming of his trees.

We have some doubts about the matter but we have concluded that the testimony of Mr. Willie, above set out, is a sufficient basis for application of the proper measure of damages in this case. It is, in effect, a shorthand rendition of the facts required to be proved.

Mr. Willie's statement that his land had been reduced in value by about $1,000 as a result of the damages to his trees is certainly the equivalent of a statement that the difference in value of his land before and after the injury was $1,000. If appellant desired to know how Mr. Willie calculated the amount of diminution in the value of his land it could easily have asked what the value of his land was before and after the injury. Regardless of what value Mr. Willie would have put on his property before and after the injury we have perfect assurance that the difference between the values would be about $1,000. A reversal to let him so testify would, in our opinion, be a misuse of our judicial power.

Appellant's first point is overruled.

■ Appellant's second point is that the Trial Court erred in not rendering judgment against Belfalls Electric as a tort feasor since judgment was rendered against it, Southwestern Bell, as another tort feasor.

Belfalls Electric owned poles on which it strung its electric wires. Under a written agreement Southwestern Bell had permission to run its telephone lines on those poles. As a result of the construction of a new highway it became necessary for the poles to be moved and some of them were placed on the Willie land. Belfalls Electric obtained permission from Mr. Willie to place the poles on his land and to move their facilities to the new poles. Willie asserts no claim against Belfalls Electric.

Southwestern Bell, without permission from Mr. Willie, moved its telephone lines to the new poles and in doing so cut and

trimmed the trees, the resulting damages being the occasion for this suit.

There is evidence in the record to the effect that Belfalls advised Southwestern Bell to procure permission from Mr. Willie before it undertook to move its telephone lines to the new poles.

It is obvious that as to appellee Willie Belfalls has committed no tort. It having no liability to Mr. Willie it could not be a joint tort feasor with appellant.

If appellant has any recourse against Belfalls Electric it must be under the contract between them. This we will now examine.

We quote from the contract the pertinent portions:

"Article V

"Establishing Joint Use of New Poles

"(a) Whenever either party hereto requires new pole facilities for an additional pole line, an extension of an existing pole line, or in connection with the reconstruction of an existing pole line, it shall promptly notify the other party to that effect in writing (verbal notice subsequently confirmed in writing may be given in cases of emergency), stating the proposed location and character of the new poles and the character of circuits it intends to use thereon and indicating whether or not such pole facilities will be, in the estimation of the party proposing to construct the new pole facilities, susceptible of joint use.

\*   \*   \*   \*   \*   \*

"(c) Each party shall place its own attachments on the new joint poles and place guys to sustain any unbalanced loads caused by its attachments. The owner shall, however, provide the initial clearing of the right-of-way, and tree trimming, which shall at least meet the requirements of the other party. Each party shall execute its work promptly and in such manner as

not to interfere with the service of the other party.

\*   \*   \*   \*   \*   \*

"Article VI

"Right of Way for Licensee's Attachments

"While the owner and licensee will cooperate as far as may be practicable in obtaining rights-of-way for both parties on joint poles, the owner does not warrant or assure to the licensee any right-of-way privileges or easements on, over or across streets, alleys and public thoroughfares, and private or publicly owned property, and if the licensee shall at any time be prevented from placing or maintaining its attachments on the owner's poles, no liability on account thereof shall attach to the owner of the poles."

Appellant relies on the language of Section (c), art. V, supra, and Belfalls Electric on the provisions of art. VI.

This feature of the case does not seem to have been fully developed but we will dispose of it to the best of our ability.

It seems to us that since a relocation of a pole line is involved requiring the acquisition of a new easement that the provisions of art. VI are applicable and take precedence over the provisions of Sec. (c), art. V.

In any event we are firmly of the opinion that the contract does not purport to make Belfalls Electric liable for damages occasioned by the trespasses of appellant.

If Belfalls is liable at all to appellant for cutting and trimming the trees it would be responsible only for the expense of so doing. Appellant does not seek recovery of this amount and if there is evidence of it we have not been so informed.

Finding no error, the judgment of the Trial Court is affirmed.

Affirmed.

On Appellant's Motion for Rehearing.

In our original opinion we expressed doubt as to our ruling that the evidence was sufficient on the issue of damages. Thus encouraged Southwestern Bell has filed a forceful motion for rehearing.

The doubt which we previously entertained about this question is completely dispelled by the opinion of Chief Justice Phillips in the case of Houston & T. C. R. Co. v. Ellis, 111 Tex. 15, 224 S.W. 471, from which we quote:

"The witness Quinn, for instance, was asked to state his judgment as 'to the damage to the pasture.' An objection that the question called for the conclusion of the witness upon a matter exclusively for the jury and for testimony not the proper basis for the correct measure of damages, was overruled. The question was repeated, but in this form, 'What would be the damage, the difference between the value of the pasture before the fire and after the fire?' The answer of the witness, shown to have been an experienced cattleman and familiar with the pasture, was this: 'If you are going to rent a pasture for stock, and one had been burned and one was not burned, I would make fifty cents an acre difference. Yes, sir, that would be a fair difference in the value.' While so much of the question as asked for a statement of the witness' opinion as to 'the damage' was objectionable, as a part of the same question he was asked to state his opinion as to 'the difference between the value' of the pasture before and after the fire; and his answer gave an amount which he expressly stated as 'the fair difference in the value.'

"The measure of damages was the difference in the value of the land because of the injury. The value of property is a matter of opinion. A witness may give his opinion on the question. No objection was made that the witness here was not qualified by knowledge to give an opinion. His testimony shows that it related to value. It might have been preferable to have had him state his opinion as to the value of the pasture land before the fire and its value afterward, instead of stating the difference between the value before and after; but his answer had the same effect. In substance, it amounted to the same thing, and a court should look to the substance. We will not reverse a judgment upon such grounds. The testimony, and that of the other witnesses as well, under any fair interpretation had reference only to the difference in the value of the land occasioned by the defendant's wrongful act. That was the inquiry before the jury."

The motion is overruled.

Motion overruled.