ECONOMY FURNITURE, INC., Appellant,

v.

J. G. JIRASEK et ux., Appellees.

No. 10834.

Court of Civil Appeals of Texas.

Austin.

April 12, 1961.

Rehearing Denied May 10, 1961.

Fagan Dickson and Smith, Robinson & Starnes, Austin, for appellant.

Byrd & Davis, Jack C. Eisenberg, Austin, for appellees.

HUGHES, Justice.

J. G. Jirasek and wife, Eleanor Virginia Jirasek, appellees, sued Economy Furniture, Inc. for damages to their property and for damages for personal injuries, harm, an-noyance and inconvenience sustained by them as a result of the maintenance of a private nusiance by appellant at its furni-ture manufacturing plant northwest of Austin, and located about 1600 feet south-east of appellees' property on which they resided.

Appellant installed an incinerator in con-nection with the operation of its furniture factory for the purpose of aiding in the disposal of waste products. The damages sued for were occasioned by the emission of smoke, fumes, sawdust, partially burned sawdust, ashes and soot from such incin-erator.

Trial to a jury resulted in a verdict and judgment for appellees.

Appellant's first two points, briefed together, are that the Trial Court erred in overruling its motion to strike an affidavit attached to appellees' answer to appellant's cross action, and in permitting the affidavit to be amended after overruling motion for new trial and after notice of appeal was filed.

Trial was had upon appellant's Second Amended Original Answer and Counter-claim and Appellees' Third Amended Orig-inal Petition.

In its pleading, appellant, after making some special exceptions, pleaded as follows:

"Without waiving the foregoing, now comes Defendant for further an-swer herein and adopts all of the allegations in the First Amended An-swer and Counter-Claim of Defendant Economy Furniture, Inc. on file here-in."

We doubt the sufficiency of this pleading to keep the previously filed answer and counterclaim alive because of the provisions of Rule 65, Texas Rules of Civil Procedure, which provides, with certain exceptions inapplicable here, that when a substituted instrument is filed the " * * * instru-ment for which it is substituted shall no longer be regarded as a part of the plead-

ing in the record of the cause * * *," and Rule 58, T.R.C.P., which provides that:

"Statements in a pleading may be adopted by reference in a different part of the same pleading or in another pleading or in any motion, so long as the pleading containing such statements has not been superseded by an amendment as provided by Rule 65." [1]

If there is no counterclaim, the invalidity of the answer to it would be immaterial. Even so, we proceed to state and dispose of the points made.

By reference to appellant's First Amended Answer and Counterclaim, we find that a compromise agreement between the parties dated August 29, 1958, was pleaded, as well as its breach by appellees, for which damages were sought.

Appellees' answer to this counterclaim was that the consideration for the compromise agreement had failed. Attached to this pleading was an affidavit dated November 11, 1959, which is complete with the exception that it is not signed by affiant, J. G. Jirasek. This instrument was filed June 11, 1959.

The trial of this case commenced April 11, 1960. Appellant's motion for new trial was overruled May 23, 1960, and notice of appeal was then given.

In its pleadings appellant had excepted to the plea of failure of consideration because of nonverification, which the Trial Court overruled, and this ruling was assigned as error in its motion for new trial.

On May 27, 1960, appellees filed a sworn motion containing these recitations and prayer:

"On the date this cause came on for trial, namely April 11, 1960, after the parties had announced ready for trial, after the selection of the jury but prior to the taking of testimony, J. G. Jirasek, plaintiff, appeared in open court before Mrs. Charles Kohrs, a deputy clerk of Travis County, Texas, for the purpose of verifying the failure of consideration portion of the Plaintiffs' Answer to Defendant's Cross-Action, as required by the Texas Rules of Civil Procedure.

"2. At the time plaintiff J. G. Jirasek appeared he read the instrument containing the failure of consideration portion of his pleadings and after understanding same raised his right hand and on his oath stated that same were true and correct and that he swore same were true and correct. The oath was administered by the clerk in the presence of other witnesses.

"3. Plaintiff would further show unto the Court that the affidavit had been typed previously in the month of November, 1959. Therefore, it was necessary to make a clerical change in the statement of the notary which was inadvertently not done. The true facts are that the verification took place on April 11, 1960.

"Wherefore, premises considered, plaintiffs pray that this Honorable Court set a time for a hearing to take testimony on the correction of this clerical error, and that upon such hearing an order be entered changing said date so as to comport with the true fact."

On May 31, 1960, appellant filed a motion for a nunc pro tunc order striking the affidavit dated November 11, 1959.

It appears from the testimony of Mrs. Chas. Kohrs, deputy district clerk, and from appellee Mr. Jirasek, as well as from the Trial Judge that November 11, 1959, was an incorrect date and that April 11, 1960, was the date on which Mr. Jirasek swore in open court to the truthfulness of

---

1. The counterclaim was properly included in the Answer. Rules 84, 85, T.R.C.P.

the plea of failure of consideration, but that he failed to sign the affidavit. This defect was remedied by the court at the hearing held on June 3, 1960 on the motions above mentioned. We copy and adopt, factually and legally, the following statement of the Trial Court made in granting appellees' motion and in overruling appellant's motion:

"The Court: Counsel will recall that at the time I overruled Defendant's Motion for New Trial that the Court stated, after rendering my judgment in that regard, that it was my recollection that the plaintiff, Mr. Jirasek, had sworn to it here in open court, and therefore substantially complied with the requirement, so far as attaching his affidavit to the particular pleadings involved.

"One of counsel for the defendant then called my attention to the fact that it was the 11th of November that it was dated. Frankly, I was at that time quite nonplussed and quite taken aback in so far as my memory goes, because at that time my memory I was sure was clear about the matter, but I knew that I was in the hospital on November 11th and could not have been here, and I so stated to counsel that I must have been wrong, because I could not have been here on November 11th.

"However, with the testimony of Mrs. Kohrs, and she apprised me of the situation shortly after that, that the dating and signing of it by the Clerk, by Mrs. Kohrs, was done at the beginning of the trial, rather than in November. That they were just blanks put there, and she filled in the blanks, and did not notice the month set out, so I still rely on my memory in that regard, because it is my recollection that Mr. Jirasek stood before the Clerk's desk and swore to that affidavit on the 11th of April.

"Now, it is not my practice to be on the Bench until counsel for both parties are in the courtroom. I recall being here and seeing it, and I can't say certainly that counsel for the defendant knew about it, but certainly it was with my consent and permission. I recognize, of course, that it was not signed at the time. I did not check it at the time. It appears that the Clerk did not check it, and that attorneys for the plaintiff did not check it, but I consider it as substantial compliance with the provision for the affidavit to the pleading which is required to be verified, and that is the reason I overruled the motion for new trial, and so I am going to overrule the motion to strike the affidavit at this time, and I will order it corrected, nunc pro tunc, by drawing a line through the word 'November' and placing in there the word 'April,' and I will allow further correction by allowing Mr. Jirasek to sign it at this time, rather than as of that time.

"Now, if that is enough to reverse a case on, I don't think it ought to be, because I don't think anybody has been harmed by it. The pleadings have been there, and they have been clear to everybody, and I have ruled on it in the light of the concept of the fact that it was sworn to all through the case, and that will be my ruling in that regard, and I will ask Mr. Jirasek if he will sign it now. Of course, the year 1959 should be changed to 1960, also. Now, the Reporter is taking this down so it will be a part of the record, and you will have your full bill to it. I recognize fully the technical absence of the affidavit at the time you went to trial, but I think it was substantially complied with, and I do not believe the entire case should be thrown out at this time because of that technicality involved, which should have been caught by me or by the Clerk or by counsel at that time and called to the Court's attention.

"I will allow Mr. Jirasek to sign this immediately above the affidavit itself, and will direct the Clerk to make that change here in court, and I will say that it is my recollection, and I am fairly sure on that matter, and I think counsel will understand how I am so sure about it, because I was so certain about it at the time, and I was so frankly quite taken aback when I saw the date of November 11th, and I did not understand how in the world my recollection could be so far off at the time I overruled the motion for new trial. So, Mr. Jirasek, if you will sign this, and the Clerk will change this, and the record will note what was changed."

■ The third point made by appellant is that the settlement agreement and release dated August 29, 1958, not having been cancelled, is a bar to this suit at least insofar as this suit includes the period for which damages were paid.

On August 29, 1958, the parties entered into a compromise agreement respecting the nuisance involved herein from which we quote:

"For and in Consideration of their mutual promises contained herein and of the specific considerations mentioned below, the parties hereto agree as follows:

"* * * * * *

"(2) Economy Furniture and Milton T. Smith and wife, Helen G. Smith,[2] hereby agree that nothing will be burned in the incinerator adjacent to their furniture manufacturing plant on any night between the hours of 8:00 p. m. and 6:00 a. m. and that on or before 8:00 p. m. on every day all fires burning in said incinerator will be fully extinguished.

"(3) Economy Furniture and Milton T. Smith and wife, Helen G. Smith, further agree that during the daytime, between the hours of 6:00 a. m. and 8:00 p. m., nothing will be burned in the incinerator if the weather and the performance of said incinerator are such that smoke or other products of the incinerator are blown or deposited upon the premises of J. G. Jirasek and wife in such quantities. as to reasonably cause material annoyance, inconvenience or discomfort to J. G. Jirasek or any member of his family; and if such condition exists, all fires then burning in said incinerator will be immediately and fully extinguished and the incinerator closed down until said conditions change.

"In this connection the parties hereby designate Tom Bagley as an independent aribiter and agree that on such times and occasions, between the hours of 6:00 a. m. and 8:00 p. m., that J. G. Jirasek or Eleanor Virginia Jirasek believe that the conditions described above exist, they may contact the said Tom Bagley and advise him of their belief that said conditions exist and that thereupon Tom Bagley shall make whatever investigation he deems necessary and shall determine whether such conditions exist, that is, whether smoke or other products of the said incenerator are being blown or deposited upon the premises of J. G. Jirasek and wife in such quantities as to reasonably cause material annoyance, inconvenience or discomfort to J. G. Jirasek or any member of his family. If upon any such occasion Tom Bagley finds that such conditions do exist, he shall immediately advise Economy Furniture by and through either Milton T. Smith or Helen G. Smith, or in the event of their unavailibility, by and through Albert Kern, and Economy Furniture and Milton T. Smith and wife will immediately cease burning waste products or any other material in the said incinerator and

2. Mr. and Mrs. Smith are owners of Economy.

will fully extinguish the fire then burning in said incinerator and will leave the incinerator closed until such conditions change. If, on the other hand, Tom Bagley finds that such conditions do not exist, he shall so advise J. G. Jirasek or Eleanor Virginia Jirasek and no further complaint will be made on said occasion.

"All parties hereby agree that Tom Bagley will incur no liabilities of any kind arising from his actions under this agreement and the decisions of Tom Bagley as to whether the conditions described above exist, even if erroneous, will be accepted by all parties as final and no recourse or claim of any kind or nature, whether valid or invalid, will be asserted by or available to any party against Tom Bagley arising from his actions under this agreement. Tom Bagley, by signing this agreement accepts the function designated to him thereunder and agrees to act as arbiter under the terms of this agreement but in no way assumes any liability to any party for claims or damages arising from his actions and decisions under this agreement.

"\* \* \* \* \* \*

"Without admitting any liability on the part of any of them, and without waiving any defense stated in defendants' Second Amended Original Answer, and only by way of compromise Economy Furniture and Milton T. Smith and wife have contemporaneously with the execution of this agreement paid unto J. G. Jirasek and Eleanor Virginia Jirasek the sum of $750.00 in cash, the receipt and sufficiency of which is hereby acknowledged, and J. G. Jirasek and Eleanor Virginia Jirasek fully and finally release Economy Furniture and Milton T. Smith and wife, Helen G. Smith, from all claims for costs, attorneys' fees and other expenses incurred in connection with the above described lawsuit, and also from all claims and actions for damages for annoyance, inconvenience and bodily discomfort incurred to date as a result of the smoke from said incinerator, such claims being specifically described in paragraph IV of Plaintiffs' Second Amended Original Petition in the above described suit. This release is not and should not be construed as a release of any future personal or property damages suffered by J. G. Jirasek or Eleanor Virginia Jirasek as a result of said smoke or of any claims for damages resulting from any loss in value of the above described real estate belonging to J. G. Jirasek and Eleanor Virginia Jirasek caused by the presence of said incinerator and smoke. It is agreed, however, that so long as Economy Furniture and Milton and Helen Smith abide by this agreement, no claim for such damages will be asserted by suit, demand, or in any other manner."

The order dismissing the suit pending when this agreement was made was without prejudice to all rights specifically reserved to appellees in the agreement.

Appellant excepted to appellees' pleading because this agreement was not alleged nor attacked. In response to these exceptions, appellees pleaded that various provisions of the settlement agreement had been breached and that the consideration for it had failed.

We believe that the breach of the covenants contained in the settlement agreement was fully averred as well as that the binding effect of the agreement was vitiated by failure of consideration.

It is not here contended that there is a dearth of evidence to support these allegations, and, for that reason, we will not refer to the testimony.

The court submitted and the jury found the damage issues as follows: (a) Damages for personal injuries and annoyance up to August 29, 1958, the date of the set-

tlement agreement, $750 (b) similar damages from August 29, 1958 to January 22, 1959, $1750 (c) permanent damages to real property $1,700.

The court in its judgment allowed as a credit to appellant the amount it had paid in the settlement.

Appellant complains that the evidence of damage and the damage issues were not restricted to the period subsequent to the settlement.

As has been noted, the settlement agreement was not simply the payment of a recited sum for the release of all claims. It was contractual in nature and was a continuing agreement. From the testimony of inconvenience, annoyance and discomfort suffered by appellees as a result of the nuisance maintained by appellant, it is not difficult to appreciate that the essence of the settlement agreement was not the payment of money, but the eradication of the nuisance.

The jury found that appellant breached its settlement agreement in many respects, and that the breaches were material.

No contention is made that these findings are insufficiently supported by evidence.

It is our opinion that these findings constitute a valid basis for disregarding the contract of settlement in the admission of evidence and submission of issues relating to damages, as the trial court did.

It is also our opinion that the trial of the issues relating to the settlement agreement, together with the principal cause of action was proper, at least in the absence of a request for a separate trial. See Rule 174, T.R.C.P.

Rule 94, T.R.C.P., provides, in part, that in pleading to a preceding pleading, a party shall affirmatively set forth "release" if it is to be relied on defensively. This certainly implies but one trial.

■ Appellant's forth point is that judgment for appellees was unwarranted in the absence of jury findings of negligence on the part of appellant, and that such negligence was a proximate cause of appellees' injuries and damages.

The theory of appellees' case as pleaded was not negligence, but the maintenance of a nuisance. The jury found that appellant did not act in a reasonable manner in using and operating its disposal facilities at its furniture factory and that the emission of smoke, sawdust, etc. therefrom constituted a nuisance. These findings are unassailed.

The jury also found that appellees' damages did not accrue without the negligence of appellant.

It is well settled that pleading and proof of negligence is not essential in cases of this character. Nuisances, Vol. 31, Tex. Jur., Sec. 11, Harper and James, Law of Torts, Vol. II, Sec. 22.8, Marvel Wells, Inc. v. Seelig, Tex.Civ.App., Austin, 115 S.W.2d 1011; Columbian Carbon Co. v. Tholen, Tex.Civ.App., Galveston, 199 S.W.2d 825, writ ref.; King v. Miller, Tex.Civ.App., Eastland, 280 S.W.2d 331, writ ref., N.R.E.

Point four is overruled.

■ By its fifth point, appellant complains of the absence of a jury finding of "unreasonableness on the part of appellant and a finding that such unreasonableness was the proximate cause of the damages suffered by appellees."

It is appellant's contention here that the jury findings, above referred to, do not constitute an affirmative finding that it made an unreasonable use of its property. We quote special issue No. 17 and answer:

"Special Issue No. 17

"Do you find from a preponderance of the evidence that under all the facts and circumstances the defendant Economy Furniture Company acted in a reasonable manner in using and operating its disposal facilities at the McNeil Road plant?

"Answer: 'Yes' or 'No.'

"Answer: No."

The jury found that appellant maintained and operated a nuisance, which term was defined in the court's charge to include the unreasonable use of property. No objection was lodged to this definition. The finding of a nuisance by the jury included a finding of all the elements of nuisance as defined in the charge of the court.

The damage issues required the jury to find damages suffered by appellees "as a result of" the smoke, sawdust, etc.

It is our opinion, in the absence of objection, that this method of submission adequately limited the damages to those caused by the maintenance of the nuisance.

■ Points six and seven, jointly briefed are that there was no finding as to whether the nuisance was permanent or temporary, and that the jury finding of $1,700 damages in the diminished value of appellees' property, due to the nuisance, was against the weight of the evidence.

The jury found that the nuisance was of a "recurring nature."

The evidence shows that appellant's plant is located on a 28 acre tract which has been thoroughly graphed for full utilization and that other construction is contemplated. Appellant in this plant and in its mill employs 275 persons with a weekly payroll of about $16,000.

These facts and the recurring nature of the nuisance fully justified the court in assuming the permanent nature of the damages and in submitting a corresponding measure of damages to the jury. Marvel Wells, Inc. v. Seelig, supra.

If there was any error in this respect, appellant has waived it by failing to object either to the evidence as to damages or to the court's charge in this respect. See Strickland Transportation Co. v. Kool, Kooshion Mfg. Co., Tex.Civ.App., Fort Worth, 230 S.W.2d 277.

We will summarize the evidence upon the damage issue which appellant attacks as being against the weight of the evidence.

■ In the previously filed suit (1958) appellees filed a sworn pleading in which their property was stated to have a value of not more than $6,000 because of the then existing conditions created by appellant and the "before" value was $9,000 ($3,000 difference).

The property sold for $12,000 in June, 1959.

Appellant's expert witness Alford testified that the valuation of the property in June, 1959 was $9,000, and that the "before" value was $8,500.

Mr. Jirasek testified that he paid $650 for the acre on which his self constructed improvements were located. A half acre of nearby land was shown to have a value of $600—$700. Two acres of nearby land was shown to have a value of $2,400.

The witness Albrecht testified appellees' property had a value of $7,000.

The witness Nardecchia, who purchased the property from appellees, testified that the house was poorly constructed and that the $12,000 purchase price was agreed to before he learned of the nuisance involved here and its depressing effect upon value. This witness also testified that appellees gave as their reason for selling that Mr. Jirasek wanted to go in the turkey business with his brother-in-law at Jollyville.

Mr. Glenn Cater, a qualified witness for appellees, testified that the property in June 1959, had a value of $16,000, but that this value would be diminished by some four or five thousand dollars due to the conditions caused by appellant's plant.

Mr. Alford, appellant's witness, confirmed the opinion that these conditions would cause the value of the property for residential use, to be depreciated.

■ Fixing the value of real property by opinion testimony is not susceptible to pre-

cise or exact standards of measurement. The important inquiry in cases of this character where property is damaged and not taken is as to the difference between the values before and after the occurrence of the cause for complaint. See Southwestern Bell Telephone Co. v. Willie, Tex. Civ.App., Austin, 329 S.W.2d 466, writ dism.

In our opinion the damage issue as answered is not so against the preponderance and overwhelming weight of the evidence as to be manifestly unjust.

The judgment of the Trial Court is affirmed.

Affirmed.