

# THE ATTORNEY GENERAL

# OF TEXAS

**CRAWFORD C. MARTIN**
**ATTORNEY GENERAL**

AUSTIN, TEXAS 78711

July 21, 1972

Honorable James Cole
State Representative
Chairman, Committee on
　House Administration
Capitol Station
Austin, Texas　78711

Opinion No. M- 1172

Re:　Conditions and circum-
　　　stances under which the
　　　Committee on House Ad-
　　　ministration must produce
　　　personnel records for
　　　examination by private
　　　individuals, and related
Dear Mr. Cole:　　　　　　　　questions.

　　　　Your request for an opinion reads as follows:

　　　　"Recently there have been many requests by private
individuals for permission to examine the personnel
records of the House of Representatives.　These
records are in the custody of the Committee on House
Administration.

　　　　"Some of the information in these records might
be considered privileged or confidential, such as
applications for employment.

　　　　"Your opinion is respectfully requested with
regard to the following questions:

　　　　"1.　Under the applicable law and legislative
resolutions, to what extent and under what con-
ditions and circumstances must the Committee on
House Administration or its chairman produce these
personnel records for examination by private in-
dividuals?

　　　　"2.　To what extent would the chairman or a
member or employee of the Committee on House Ad-
ministration subject himself to liability for in-
vasion of the right of privacy or for libel or
slander as a result of voluntarily producing such
records for examination by private individuals?"

　　　　While a resolution may control the internal administra-
tion of the House of Representatives, you have not advised us of

-5717-

Hon. James Cole, page 2       (M-1172)

any resolution, rule or regulation of the House relating to the inspection of these records. The resolutions, rules, and regulations furnished to us contain no provisions relating to inspections of these records.

The right to inspect certain records in the custody of State officials is provided for in certain instances by statutes and, in other instances, a citizen may have a common law right to inspect certain records if the citizen can show a justiciable interest in the context of the records. Attorney General's Opinion V-681 (1948). Generally speaking, however, the right to inspect records is dependent upon the various statutes applicable to particular records. We will quote from a few Attorney General's Opinions in support of this conclusion.

Attorney General's Opinion M-157 (1967):

"The State Department of Public Welfare must furnish to the Texas Department of Public Safety, pursuant to the provisions of Section 16 of House Bill 354, Acts 60th Legislature, Regular Session, Chapter 328, page 778, codified as Section 30A of Article 6687b, Vernon's Civil Statutes, a list of each person who applies for or receives public assistance as a needy blind person, regardless of the existing provisions of Section 33 of Article 695c, Vernon's Civil Statutes."

Attorney General's Opinion M-452 (1969):

"Accident reports submitted by peace officers to the Department of Public Safety after January 1, 1970 are public records and a copy of such accident report en toto must be furnished to any person requesting same and paying a $2 fee. The Department may not detach a portion of such report for statistical purposes but the Department may prepare a separate statistical report."

Attorney General's Opinion M-516 (1969):

"Hospital administrators may refuse to furnish to the deceased's widow the medical records of the deceased former patient who died shortly after his discharge."

Attorney General's Opinion M-317 (1968):

"(1)  The Texas Department of Mental Health
and Mental Retardation may furnish to local com-
munity centers the medical records of persons who
have been treated in its institutions who are
residents of the region served by the local com-
munity center.

"(2)  Community centers may furnish to the
Texas Department of Mental Health and Mental Re-
tardation medical records on persons treated by such
local community centers."

Attorney General's Opinion M-213 (1968):

"Any officer of this state charged with the
enforcement of its laws may be shown the notices,
orders, records and publications in custody of the
Texas Liquor Control Board, which are made 'privi-
leged' documents under Article 666-12a(5), Vernon's
Penal Code.  Such records, etc., may also be pro-
duced in the course of some proceeding in which the
Board or the state is a party (either judicial in
nature or in an action instituted to suspend or can-
cel the permit or to collect taxes due or penalties
for violation of the laws of this state), and may
be presented to the legislature for study in en-
acting informed legislation regulating the liquor
industry.  The business information furnished by
licensees or obtained by the Board through in-
spection of licensed premises is not to be publicly
disclosed except for such purposes and to such au-
thorized officials except where such information has
become a matter of public record as a result of legal
proceedings of the nature specified, including hear-
ings before the Administrator on violations of Texas
liquor laws."

Attorney General's Opinion M-295 (1968):

"The Securities Commissioner is an 'Officer of
the State charged with the enforcement of its laws,'
pursuant to Article 581-28, Vernon's Civil Statutes,
and within the meaning of Article 12.10, Title 122A,
Taxation-General, Vernon's Civil Statutes, and is

entitled to request of and receive from the State
Comptroller of Public Accounts of the State of Texas
copies of franchise tax reports made by corporations
to the said Comptroller."

Attorney General's Opinion M-388 (1969):

"The Commissioner of Insurance, being an 'Of-
ficer of the State charged with the enforcement of
its laws,' pursuant to Article 1.09(a), of the Texas
Insurance Code, and within the meaning of Article
12.10, Title 122A, Taxation-General, V.C.S., is
entitled to request of and to receive from the State
Comptroller of Public Accounts of the State of Texas
copies of franchise tax reports made by corporations
to the Comptroller."

It is our opinion that whether certain records are re-
quired to be made available for a limited or unlimited inspection
is dependent upon the nature of the records and the authority to
inspect them provided by various statutes as well as the justiciable
interest of the person seeking to make the inspection. Morris v.
Hoerster, 348 S.W.2d 642 (Tex.Civ.App. 1961, error ref. n.r.e.);
Morris v. Smiley, 378 S.W.2d 149 (Tex.Civ.App. 1964, error ref.
n.r.e.); Morris v. Hoerster, 377 S.W.2d 841 (Tex.Civ.App. no writ);
Pruett v. Burr, 257 P.2d 600 (D.C. Calif. 1953); Mathews v. Pyle,
75 Ariz. 76, 251 P.2d 893 (1952); Sorley v. Lister, 218 N.Y.S.2d
215 (1961).

We have been unable to find any statutory provision mak-
ing personnel records described in your request "public records".
See Mathews v. Pyle, 75 Ariz. 76, 251 P.2d 893 (1952). Neither
have we been able to find any statutory provision requiring or
authorizing inspections of personnel records described in your re-
quest, and it is our opinion that a private individual does not
have a common law right to inspect those records. You are there-
fore advised that neither the Committee on House Administration
nor its Chairman is required to produce personnel records for
examination by private individuals.

In this connection as well as in answer to your second
question, we observe that the personnel records are not by statute
made confidential or privileged records and there is no law general-
ly of which we are aware which would prevent the voluntary dis-
cretionary disclosure of various information that may be in these
records by the Committee on House Administration, the custodian of
the records. The particular information to be so divulged would

no doubt be dependent upon the nature of the particular record involved and the wrong, if any, resulting from the examination. For that reason, we are unable categorically to give any precise answer to your second question.  It is our opinion that generally it is within the sound discretion of the custodian of the records as to what information or portion of the record he may see fit to disclose to the public, subject, however, to the necessary qualification that he should not make a disclosure that would violate the right of privacy of the individual concerned or that might subject the custodian to a meritorious defamation action.

A tort action arising out of publication, written or oral, for invasion of the right of privacy is now recognized in a majority of the states, but there being no such action recognized at common law, Texas has so far refused to recognize such an action in the absence of statute.  Milner v. Red River Valley Pub. Co., 249 S.W.2d 227 (Tex.Civ.App. 1952, no writ); McGullach v. Houston Chronicle Pub. Co., 211 F.2d 4 (5th Cir. 1954); Billings v. Atkinson, 471 S.W.2d 908, 912-913 (Tex.Civ.App. 1971, error granted); 46 Tex.Jur.2d 317, Privacy; 23 Baylor Law Rev. 117, 120, 126, 133.  However, Texas courts have afforded limited relief in cases of physical invasion of one's person or property, and Texas has dealt with wrongful acts as illegal searches both by statute and judicial decision.  Shell Petroleum Corp. v. Liberty Gravel & Sand Co., 128 S.W.2d 471 (Tex.Civ.App. 1939, no writ); Lyle v. Waddle, 144 Tex. 90, 188 S.W.2d 770 (1945); Hughes v. State, 67 Tex.Crim. 333, 149 S.W. 173 (1912); U.S. Const., Amend. IV; Art. 1, Sec. 9, Tex. Const.  Eavesdropping is dealt with by federal statute.  47 U.S.C.A. 605.  Recovery is allowed where the interference substantially and unreasonably interferes with one's comfort, use, and enjoyment of property.  Brown Supply Co. v. Lester, 304 S.W.2d 192 (Tex.Civ.App. 1957, writ ref., n.r.e.).  In Maresca v. Marks, 362 S.W.2d 299, 301 (Tex.Sup. 1962), involving a litigant's right of discovery of relevant information disclosed by income tax returns, the court observed that "The protection of privacy is of fundamental -- indeed, of constitutional importance" and that such discovery "is sustainable only because the pursuit of justice outweighs protection of their privacy."

A limitation upon the right of privacy has likewise been noted, and it has been held that the right does not extend to those facts which are "newsworthy" and in which the public has a legitimate interest.  Mahaffey v. Official Detective Stories, 210 F.Supp. 251 (W.D. La. 1962).

Several federal decisions by the United States Supreme Court have recognized a limited right of privacy in domestic relations and in involvement of one's political past and association which are damaging in the extreme.  See <u>Griswold v. Connecticut</u>, 381 U.S. 479 (1965); <u>Sweezy v. New Hampshire</u>, 354 U.S. 234 (1957); <u>De Gregory v. Attorney General of New Hampshire</u>, 383 U.S. 825 (1966); Antieau's Modern Constitutional Law, Vol. 1, pp. 200-203, Sects. 2:38 and 2:39.

As discussed in 46 Texas Law Review 611, 621, the right to privacy should not prohibit any disclosure of matter which is of public or general interest.  This is somewhat similar to the privilege of fair comment on matters of public and general interest in the law of defamation.

The disclosure problem with which we are concerned is discussed in an article, "Defamation, Privacy, and the Public's Right to Know:  A National Problem and a New Approach," 46 Tex. Law Rev. 630, 633, wherein it was observed that it "encompasses three disparate and often conflicting interests.  Defamation and privacy work to restrict publication, whereas the essence of the third interest -- the public's right to know -- is free and un- fettered communication.  Where interests conflict, it is both necessary and desirable to resort to a balancing test, assuming of course that each interest is given a weight vis-a-vis the others commensurate with its own importance."

With reference to defamation, the U.S. Supreme Court has held that a defamatory comment concerning public officials or certain other public persons fell within the protection of the first amendment to the United States Constitution and no re- covery of damages may be awarded without a showing of actual malice.  <u>New York Times Co. v. Sullivan</u>, 376 U.S. 254 (1964). This includes a tort action for the invasion of privacy by mass publicity.  <u>Time, Inc. v. Hill</u>, 385 U.S. 374 (1967).  Actual malice must be shown under Texas decisions to circumvent the defense of fair comment.  <u>Broadstreet Co. v. Gill</u>, 72 Tex. 115, 9 S.W. 753 (1888).

It is also noted that the defense of "fair and accurate comment and criticism" exists in the field of libel.  23 Baylor Law Rev. 127.

In the "personnel records" of the House of Representa- tives, many items proper as well as improper for disclosure might be found.  We know of no requirements as to what matters may or

may not be inserted therein. Many matters therein may possibly be found in certain public records required to be maintained and surely these matters might properly be disclosed if not otherwise objectionable as previously discussed.

In addition, certain other matters might be properly described which are of public interest which are directly related to the governing process and which follow within the general guidelines set out above, such as the name of the person hiring the employee, the employee's salary or other compensation, his classification and nature of duties and other relatives employed by the State.

### S U M M A R Y

While the personnel records in the custody of the Committee on House Administration of the House of Representatives are not "public records" and there is no common law right to inspect them by the members of the public, nevertheless they are not by statute privileged or confidential, and it is within the sound discretion of the custodian of the records to disclose certain proper information therefrom in which the public has a right to know and which would not violate the right of privacy of the individual concerned or give rise to a meritorious action for defamation.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by John Reeves
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
W. E. Allen, Co-Chairman
Ben Harrison
Linward Shivers
Pat Bailey
Jack Goodman

SAMUEL D. McDANIEL
Staff Legal Assistant

ALFRED WALKER
Executive Assistant

NOLA WHITE
First Assistant